STITT v MAHANEY

Docket No. 59150. Argued December 6, 1977 (Calendar No. 1).—Decided December 22, 1978. Rehearing denied 406 Mich 1102.

Daniel J. Stitt brought an action for medical malpractice against Robert C. Mahaney, M.D., an orthopedic surgeon, Donald E. DeWitt, M.D., a general practitioner, Owen J. Gesink, a radiologist, and the City of Holland, which operates the Holland City Hospital where the plaintiff was treated. The defendants, relying on an erroneously labeled X-ray, placed the wrong leg of the plaintiff in traction for 11 days in attempting to treat a fractured hip socket resulting from an automobile accident. The plaintiff's guardian executed a release to the driver of the vehicle involved in the accident for all claims arising out of it. The Ottawa Circuit Court, George V. Boucher, J., admitted the release into evidence over the plaintiff's objection and instructed the jury that the defendants had the burden of proving that they were released from liability. He further instructed that the consideration the plaintiff received from the driver for the release should be subtracted from the defendant's liability in computing damages. The trial court entered a judgment on a directed verdict for Dr. DeWitt, the plaintiff's family physician, for "insufficient evidence" of malpractice, and entered judgments on the jury's verdicts for the other defendants. The Court of Appeals, R. B. Burns, P.J., and M. J. Kelly, J. (S. S. Hughes, J., dissenting), affirmed (Docket No. 22190). Plaintiff appeals. *Held:*

    1. The release of the original tortfeasor was relevant to this

REFERENCES FOR POINTS IN HEADNOTES

[1] 66 Am Jur 2d, Release §§ 30, 37, 64.
    Right to jury trial on issue of validity of release. 43 ALR2d 786.

[2] 66 Am Jur 2d, Release §§ 39, 41.
    Manner of crediting one tortfeasor with amount paid by another for release or covenant not to sue. 94 ALR2d 352.
    Release of one responsible for injury as affecting liability of physician or surgeon for negligent treatment of injury. 39 ALR3d 260.

[3] 66 Am Jur 2d, Release §§ 37-45.

[7] 66 Am Jur 2d, Release § 50.

[8] 66 Am Jur 2d, Relase §§ 14-27, 30, 40.

[10] 66 Am Jur 2d, Release § 39.

[11] 66 Am Jur 2d, Release §§ 39, 40.

suit against these alleged successive tortfeasors and was properly admitted in evidence. The "boiler plate" language in the release in this case is that generally found in printed release forms for general application and its meaning in the context of the case is unclear. One plausible interpretation would extend the terms of the release to the defendants, another would not. It is necessary to determine the intention of the parties to the release which, therefore, is properly admissible into evidence. The *factual question of the parties' intention* was properly left to the jury, with appropriate instructions.

2. On the issue of damages, the trial judge erred in instructing the jury that the law *required* a deduction of the prior settlement with the original tortfeasor from any damages found owing by the defendants. The plaintiff is entitled to a new trial with proper instructions on damages in accordance with the substance of those suggested by Justice Williams.

Justice Williams, with Justices Levin and Moody, agreed that the plaintiff is entitled to a new trial with proper instructions on damages but would hold that the release was not admissible:

1. The negligence of the defendants in the malpractice action is independent of and successive to the negligence that caused the original injury; the defendants in the malpractice action are not jointly or concurrently liable with the driver of the automobile which caused the plaintiff's fractured hip. Therefore the former statute which declared that a release of one tortfeasor from liability does not release others jointly liable for the same wrong has no application in this case.

2. The rule frequently applied that a release given to an original tortfeasor bars suit against a subsequently negligent physician for negligent treatment of the injury is unsound. An injured party is limited by the common law to one satisfaction as full compensation for all injuries. However, a release given to an initial tortfeasor need not release subsequent independent tortfeasors from liability for the injuries they inflicted simply because the first tortfeasor might have been liable for their subsequent negligence. To presume that it does confuses the concepts of release and satisfaction. The proper issue of fact is whether there has been satisfaction of all damages, rather than whether there has been a release of all liability. A release given to one tortfeasor who acted independently and concurrently with another to cause a single indivisible injury does not release all such tortfeasors. There is no basis for admitting the release in this case into evidence and permitting the trier of

fact to decide whether it was the intent of the parties making the release that the release should extend to these defendants.

3. A plaintiff should not be compelled to surrender his cause of action against a wrongdoer unless he has intentionally done so, or unless he had received such full compensation that he is no longer entitled to maintain the action. This is not to say that a release negotiated with one tortfeasor is never admissible into evidence against an independent tortfeasor; but the defendants have the burden to plead the release as an affirmative defense and to establish the relevance of the release to the action.

4. The trial court erred in deciding that the release was admissible into evidence under case law. It is clearly limited by its language to damages resulting from the automobile accident. The plaintiff's action for malpractice results from the separate occurrences of mislabeling the X-rays and keeping the wrong leg in traction for 11 days after one of the doctors discovered the error. The record shows that there was no intent by the parties to the release that it would extend to these defendants. The testimony showed that there had been no discussion with anyone about releasing the doctors and the hospital from liability and that the plaintiff's guardian was under the impression that the release was being given only to the driver of the car and his wife, who were retired and did not have much money. There was no foundation laid to show that any of the defendants were involved in the negotiations or that any of the consideration for the release came from them. Most importantly, there was no clear indication on the face of the document that it was intended to extend to these independent and successive tortfeasors.

5. The original tortfeasor could have been liable for all of the plaintiff's injuries, including those resulting from the subsequent malpractice of physicians treating the injuries if the plaintiff exercised reasonable care in securing competent medical treatment. However, this rule of law exists because the original tortfeasor put the plaintiff in a position where a second injury occurred. It is not based on the fallacy that the two separate injuries are one occurrence. Furthermore, the rule does not operate to hold a negligent physician liable for the injuries which brought the plaintiff to the hospital.

6. There can be but one recovery for an injury and if the plaintiff recovered from the original tortfeasor for all of his injuries, including those resulting from the malpractice, then any recovery in this suit should be barred. It is a question of fact whether the plaintiff's settlement with the driver satisfied

all damages caused by the wrong or was intended to satisfy them. The record shows that the parties to the release did not contemplate that the resolution of the claim against the driver would affect their ability to recover for the subsequent tort. Resolution of the question whether the plaintiff has been, in fact, fully compensated for his injury is not affected by the existence of the release. Therefore the release was not admissible into evidence on the question of satisfaction. It is impossible to assess the weight the jury gave to this evidence, but it cannot be said that the result in this suit might not have been different but for the admission of this evidence and the giving of jury instructions pertaining to it.

7. This suit is based solely upon injuries resulting from the malpractice and any recovery must be based on damages proximately caused by the defendants and not by the initial injury. The two injuries are separate and distinct, rather than indivisible. Nothing mandates a deduction from the damages for malpractice of the amount recovered for the initial injury. It is a question for the trier of fact under proper instruction. The instruction that the deduction must be made was erroneous. Deduction can only be permitted under these facts if there is a finding of liability for malpractice in addition to a finding of total or partial satisfaction by the initial settlement with the original tortfeasor.

Reversed and remanded for a new trial.

72 Mich App 120; 149 NW2d 319 (1976) reversed.

OPINION OF THE COURT

1. RELEASE — SATISFACTION — INTENT — QUESTION OF FACT.

Determination of the intention of the parties to a release is properly left to the jury, with appropriate instructions, where the language of the printed release form used by the parties is susceptible of conflicting interpretations, one of which plausibly would extend its terms to the defendants, subsequent tortfeasors, who were not parties to the release (MCL 600.2925d; MSA 27A.2925[4]).

2. DAMAGES — SUBSEQUENT TORTFEASORS — RELEASE — SATISFACTION — INSTRUCTIONS TO JURY.

An instruction to the jury that the law *requires* a deduction of the amount of a settlement with the original tortfeasor from any damages found owing by defendant attending physicians for malpractice in treating the original injury is erroneous.

DISSENTING OPINION BY WILLIAMS, J.

3. RELEASE — TORTS — SUCCESSIVE TORTFEASORS — STATUTES.

The former statute providing that a release of one tortfeasor from liability does not release others jointly liable for the same injury does not apply where the negligence of the tortfeasors is independent and successive (MCL 600.2925[2]; MSA 27A.2925[2]).

4. RELEASE — SATISFACTION — SUCCESSIVE TORTFEASORS.

A release given to one tortfeasor for all injuries need not release subsequent independent tortfeasors from liability simply because the first tortfeasor might have been liable for the subsequent negligence.

5. RELEASE — SATISFACTION — SUCCESSIVE TORTFEASORS — EVIDENCE — ADMISSIBILITY.

An issue whether a plaintiff's settlement with an initial tortfeasor constitutes satisfaction of all subsequent damages flowing from his wrong does not necessarily justify admission into evidence of the release which the parties executed as a result of that settlement in an action against subsequent tortfeasors.

6. RELEASE — SUCCESSIVE TORTFEASORS.

A release given to one tortfeasor who acted independently and concurrently with another to cause a single indivisible injury does not release all such tortfeasors.

7. RELEASE — SUCCESSIVE TORTFEASORS — EVIDENCE — ADMISSIBILITY.

A release which a plaintiff negotiated with one tortfeasor may be admissible in a suit by the plaintiff against an independent tortfeasor where the defendant pleads the release as an affirmative defense and establishes the relevance of the release to the action.

8. RELEASE — ACTIONS — INTENT.

A plaintiff should not be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain the action.

9. RELEASE — SUCCESSIVE TORTFEASORS — INTEREST.

A release which a plaintiff gave to one tortfeasor is not admissible into evidence on behalf of independent successive tortfeasors where the language of the release is clearly limited to damages arising out of the first tort, the injuries caused by the successive tortfeasors resulted from separate occurrences in

treating the first injury, testimony concerning the negotiations which resulted in the release shows a lack of intention to extend the release to the successive tortfeasors, and there is no proof that they were involved in those negotiations nor that they provided any of the consideration given for the release.

10. TORTS — SUCCESSIVE TORTFEASORS — MALPRACTICE.

A tortfeasor may be liable for all of the plaintiff's injuries, even those resulting from subsequent malpractice of a physician, provided that the injured plaintiff exercised reasonable care in securing the services of a competent physician.

11. DAMAGES — SATISFACTION — TORTS — SUCCESSIVE INJURIES.

There can be but one recovery for an injury; if a plaintiff recovers from one tortfeasor for all of his injuries, including those resulting from subsequent malpractice in treating the injuries, then any separate recovery for the malpractice is barred.

12. DAMAGES — SATISFACTION — TORTS — SUCCESSIVE TORTFEASORS.

Whether a plaintiff's settlement with a tortfeasor actually constitutes satisfaction of all damages, including subsequent malpractice in treating the injuries caused by his wrong, or was intended to satisfy them, is a question of fact.

13. DAMAGES — SATISFACTION — SUCCESSIVE TORTFEASORS — EVIDENCE — ADMISSIBILITY — RELEASE.

A release which a plaintiff gave to one tortfeasor is not admissible into evidence on the issue whether the consideration received for the release in fact fully compensated the plaintiff for injuries caused by successive tortfeasors.

14. DAMAGES — SATISFACTION — SUCCESSIVE TORTFEASORS — MALPRACTICE.

Recovery for injuries resulting from the negligence treatment of injuries caused by an independent original tortfeasor must be based on the damages proximately caused by the malpractice and not reduced by the damages caused by the original injury where the two injuries are not indivisible, but separate and distinct.

*William L. Mackay* for plaintiff.

*Hillman, Baxter & Hammond* for defendant Mahaney.

*Cholette, Perkins & Buchanan (by Edward D. Wells)* for defendant DeWitt.

*Norris & Keyser, P.C. (by Reginald L. Norris and J. Stephen Marshall),* for defendant Gesink.

*Kitch & Suhrheinrich, P.C. (by Richard R. De-Nardis and Gregory G. Drutchas),* for defendant City of Holland.

RYAN, J. I agree that plaintiff is entitled to a new trial. However, I do not agree with Justice WILLIAMS' answer to the first question posed in this case. The release of the original tortfeasor was relevant to this suit against these alleged successive tortfeasors and was properly admitted in evidence.

## I. ADMISSIBILITY OF THE RELEASE

I do not agree that the language of the printed release form under consideration clearly limits the release to the original tortfeasors. The language of the document of release explicitly releases, acquits and forever discharges any and all persons, firms and corporations from any and all actions, claims and all consequential damages in any way growing out of the injuries resulting from the original accident.[1] The "boiler plate" language employed is that generally found in printed release forms for general application and its meaning is unclear. On its face it could be interpreted to release defend-

---

[1] The release provided, in relevent part:

"* * * I * * * release, acquit and forever discharge the promisor(s) _____ firms, and corporations of and from any and all actions, causes of action, claims, demands, damages, costs, loss of service, expenses, compensation, and all consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from the accident or occurrence above described."

ants, although it could also reasonably be interpreted as a release solely of the liability for injuries suffered in the original accident. Both interpretations are plausible. The question thus becomes one of determining the intention of the parties to the release.

Seeking to determine the intention of the parties to the release comports with the modern trend in this area of the law which is that the determination of whether a release of an original tortfeasor constitutes a bar to an action against the treating physician is a question of the intention of the parties to the release. 39 ALR3d 260, § 2[a], p 265 and § 8, p 281. The question of the intention of the parties, where the language of the release is ambiguous, is normally one to be determined by the trier of fact.

The language of the printed release form used in this case was susceptible to conflicting interpretations, one of which plausibly would extend its terms to defendants. Consequently, it was necessary to determine the intention of the parties to the release. The document of release was relevant to this determination and, therefore, properly admissible in evidence. The factual determination of the parties' intention was properly left to the jury, with appropriate instructions.[2]

---

[2] The trial court instructions regarding the release, which I believe were proper, were as follows:

"* * * It is also his claim [Dr. Mahaney] that a settlement was made in the sum of $7,021.41, by the signing of a general release, and that general release, given in the course of that settlement, was a complete settlement of damages and injuries and bars the plaintiff from recovery from any of the defendants in this lawsuit. Dr. Mahaney claims he is entitled to a judgment in his favor."

"* * * Finally Dr. Gesink claims that the release given by the plaintiff to the automobile driver was intended to release him, as well."

"* * * It is also the city's position that plaintiff, in fact, sustained no additional injuries or aggravations of his accident injuries because of what happened, and that the hospital, as well as the other defend-

## II. DEDUCTION OF AMOUNT RECEIVED FROM ORIGINAL TORTFEASOR FROM POTENTIAL RECOVERY AGAINST DEFENDANTS

I agree that the trial court erred by instructing the jury that the law required a deduction of the prior settlement with the original tortfeasor from the damages, if any, found owing by defendants.

Because the jury instructions on this issue were erroneous, I would remand for a new trial with direction to the trial judge to properly instruct the jury on the permissible deductibility of all or part of the settlement in accordance with the substance of the instructions suggested by Justice WILLIAMS.

KAVANAGH, C.J., and COLEMAN and FITZGERALD, JJ., concurred with RYAN, J.

WILLIAMS, J. This case raises the question of whether the release of a tortfeasor causing injuries through an automobile accident is necessarily relevant to a suit against successive and independent tortfeasors who render negligent medical attention. It also raises the question as to the propriety of a court instruction that the prior consideration from the original tortfeasor should be deducted from any liability of the subsequent tortfeasors. We hold that the prior release was not relevant to the suit against the successive and independent

ants, were intended to be released by the release received in evidence."

"* * * The defendants have the burden of proving their affirmative defense that they were released by the document received in evidence as Exhibit 40. That document will release these defendants only if at the time it was executed it was so intended by the plaintiff and his parents, and they intended that the sum received from the automobile driver was in full satisfaction not only of their claim against that driver, but also their claims against the defendants in the lawsuit."

tortfeasors and that whether a deduction is appropriate is a question of fact.

## I. FACTS

On July 5, 1970, plaintiff Daniel Joseph Stitt was riding a motorcycle to his place of employment when he was seriously injured in a collision with an automobile. Stitt was taken to the Holland City Hospital where he ultimately spent 7-1/2 weeks recovering from his injuries. We adopt the following facts from the Court of Appeals opinion which enumerate the injuries and the basis of this cause of action in medical malpractice, 72 Mich App 120, 123-124; 249 NW2d 319 (1976).

"Plaintiff was * * * taken in critical condition and great pain to the emergency room at the defendant city's hospital. Defendant Dr. DeWitt, plaintiff's family physician, met him at the hospital and ordered numerous X-rays. Dr. DeWitt summoned defendant Dr. Mahaney, an orthopedic surgeon, who assumed care of the patient, reviewed the X-rays, and, pursuant thereto, ordered traction of the right leg in treatment of an apparent fracture of the right acetabulum (hip socket).

"Unbeknownst to Dr. Mahaney, a hospital technician had mislabeled an X-ray: plaintiff was actually suffering a fracture of his left hip. This error was discovered on the next day by defendant Dr. Gesink, a radiologist, who corrected the X-ray label and dictated a report for Drs. Mahaney and DeWitt with a copy for plaintiff's file. For some reason, Dr. Mahaney did not become aware of the error until his request for follow-up X-rays 11 days later. Traction remained for this period on the 'wrong' leg."

The defendants concede the mistake but assert that Stitt was not damaged thereby.

Two years after the accident, Stitt's father, as

guardian for his then minor son, settled the negligence claim against the driver of the automobile for approximately $7500, including medical expenses, and executed a general release.

Subsequently, the instant action for damages resulting from the mislabeling of the X-ray was brought against Stitt's family doctor (Donald E. DeWitt, M.D.),[1] the orthopedic surgeon (Robert C. Mahaney, M.D.), the X-ray service company (Owen J. Gesink, doing business as C. P. Truog & Associates), and the City of Holland (owner of the hospital).

The trial court allowed into evidence, over objection of plaintiff, the release executed by Stitt's father. The court instructed the jury as to the release as follows:

"* * * It is also his claim [Dr. Mahaney] that a settlement was made in the sum of $7,021.41, by the signing of a general release, and that general release, given in the course of that settlement, was a complete settlement of damages and injuries and bars the plaintiff from recovery from any of the defendants in this

---

[1] The trial court directed a verdict of no cause of action in favor of Dr. DeWitt at the close of plaintiff's case due to "insufficient evidence" of any malpractice (presumably because he was a general practitioner rather than a specialist). The Court of Appeals majority opinion in the instant case did not deal with this issue, *Stitt v Mahaney,* 72 Mich App 120; 249 NW2d 319 (1976), although Judge HUGHES, in dissent, stated:

"I further believe that the court erred in directing a verdict of no cause of action in favor of Dr. DeWitt. The record dictates that the question of his potential liability be determined by the jury. Dr. DeWitt ordered X-rays, including one of the actually injured left hip, and assisted Dr. Mahaney in tractioning the wrong leg in spite of the apparent indication of the left hip X-ray (exhibit 10)." *Stitt, supra,* 72 Mich App 120, 129.

We granted leave to appeal solely to consider issues involving the release and deduction of prior settlement, see Part II *infra.*

Attorneys for Dr. DeWitt request that the opinion of this Court clarify that their client is no longer a party to this action; we decline to go into the issue but determine that it should be left for resolution at a new trial on remand.

lawsuit. Dr. Mahaney claims he is entitled to a judgment in his favor."

"* * * Finally Dr. Gesink claims that the release given by the plaintiff to the automobile driver was intended to release him, as well."

"* * * It is also the City's position that plaintiff, in fact, sustained no additional injuries or aggravations of his accident injuries because of what happened, and that the hospital, as well as the other defendants, were intended to be released by the release received in evidence."

"* * * The defendants have the burden of proving their affirmative defense that they were released by the document received in evidence as Exhibit 40. That document will release these defendants only if at the time it was executed it was so intended by the plaintiff and his parents, and they intended that the sum received from the automobile driver was in full satisfaction not only of their claim against that driver but also their claims against the defendants in this lawsuit."

The court further instructed the jury as to the relevance of the settlement with the original tortfeasor:

"* * * The plaintiff received $7,020.41 in his settlement of the claim against the driver of the automobile involved in the motorcycle accident. Under the law of Michigan as it now exists, such a driver is responsible for the reasonably foreseeable consequences of his act, including the subsequent negligent conduct of others. The law further requires that any such payment received by the plaintiff from such driver be subtracted from any judgment returned against any subsequently negligent person. After you determine the amount of damages, if any, which have resulted from the negligence of one or more of the defendants in this lawsuit, you must then subtract $7,020.41 from that amount and return the resulting figure as your verdict."

Plaintiff's attorney objected to the instructions:

"* * * I would like to object to the court's instructing the jury on the grounds of the release because there is no proof in this record, affirmatively, that was proven or that it had anything to do with the acts of negligence of the defendants, nor should any deduction be made from the verdict."

The trial resulted in a jury verdict of no cause of action in favor of all defendants.

The Court of Appeals affirmed the judgment November 8, 1976. We granted leave to appeal May 9, 1977.

## II. ISSUES

The issues upon which we granted leave to appeal involve the release and prior settlement; (1) whether the release was admissible into evidence by these defendants, and (2) whether the court properly instructed the jury that the amount received by plaintiff in consideration for the release must be deducted from any amount for which defendants might be held liable? We resolve both issues in the negative.

## III. ADMISSIBILITY OF EVIDENCE

*A. Release*

Under the common law, release of one tortfeasor necessarily released all other tortfeasors who were jointly liable for the same injuries. *Witucke v Presque Isle Bank,* 68 Mich App 599, 604; 243 NW2d 907 (1976). The historical rationale for the above principle includes the following: (1) that the injury which results from the joint action is a single injury and constitutes a single basis for recovery, see Fowler, Comment: *Torts—Release— Release of One Tort-Feasor Not a Release When*

*Tort-Feasors Are Independent and Successive,* 51 Denver L J 285, 286 (1974), and (2) that it must be presumed that a settlement with one of the joint tortfeasors represents full satisfaction for the injury caused and any additional recovery would create double compensation, *Derby v Prewitt,* 12 NY2d 100, 104; 236 NYS2d 953; 187 NE2d 556 (1962). Despite much criticism of the above principle and its rationale,[2] until recently it was adhered to by the majority of jurisdictions, Prosser, Law of Torts (4th ed), § 49.

At the time of the injury in the instant case, Michigan had statutorily declared that a release of one tortfeasor does not release others jointly liable for the same wrong, MCL 600.2925(2); MSA 27A.2925(2) superseded by MCL 600.2925d; MSA 27A.2925(4). The release involved in the instant case, however, is not covered by the statutory mandate effective at the time the injury occurred[3] because these defendants are neither jointly nor concurrently liable with the driver of the automobile for the same injury; the negligence of these defendants is independent and successive. *Sobotta*

---

[2] McCartha, Comment: *Torts—The Release of One Tortfeasor Does Not Release Others in South Carolina,* 24 SC L Rev 293, fn 2 (1972); Samson, Note: *Contribution Among Tortfeasors In Nevada,* 23 Hastings L J 1612 (1972); see also, Prosser, Law of Torts (4th ed), § 49, p 304.

[3] The current Michigan statute, MCL 600.2925d; MSA 27A.2925(4), effective as to torts committed after January 1, 1975, eliminates the word "joint".

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

"(b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

"(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor."

*v Vogel,* 37 Mich App 59; 194 NW2d 564 (1971);
*Derby v Prewitt,* 12 NY2d 100; 236 NYS2d 953;
187 NE2d 556 (1962).

Absent statutory authority, we must look to the
common law and despite the fact that a release
given to one tortfeasor would seem to have little
relevancy to successive and independent tortfea-
sors, such as the defendant physicians herein, the
general rule (and the majority rule, at least until
1955) was consistent with the traditional view as
to joint tortfeasor:[4] a release given to an original
tortfeasor barred suit against a subsequently negli-
gent physician for negligent treatment of the in-
jury. See 40 ALR2d 1075, supplemented by 39
ALR3d 260.

The basis often espoused for adherence to such a
rule of law is similar to that in the joint tortfeasor
situation; since the original tortfeasor could be
held liable for the total injury, even the portion
attributable to the negligence of a treating physi-
cian, see *Derby v Prewitt, supra,* 103; 100 ALR2d
808, 813, recovery beyond that from the original
tortfeasor might constitute double recovery.

This reasoning confuses the legal concepts of
release and satisfaction.[5] To limit an injured party
to one satisfaction for his or her total injuries is
basic to the concept of civil justice; to go beyond
that and presume a release to an original tortfea-
sor was given in consideration for total injuries,
even those caused by a subsequent tortfeasor, sim-
ply because the original tortfeasor might have

---

[4] Eggleston, Comment: *Torts: Release of Joint and Successive Tort-
feasors,* 13 Washburn L J 257, 258 (1974).

[5] See Prosser, Law of Torts (4th ed), § 49, p 301, in which it states:

"There is a genuine distinction between a satisfaction and a release.
A satisfaction is an acceptance of full compensation for the injury; a
release is a surrender of the cause of action, which may be gratuitous,
or given for inadequate consideration."

been so held, stretches credulity and can rightfully be criticized on several grounds:

"It * * * (1) provides a trap for the innocent plaintiff whereby he may be deprived of full compensation, (2) allows the courts to disregard totally the language and intent of the parties, (3) rewards the wrongdoer who makes no attempt to settle at the expense of the one who does, (4) gives tort-feasors an advantage inconsistent with the nature of their liability, and (5) stifles compromise since each wrongdoer wants to wait until the other settles first." 51 Denver L J 285, 292.

In the instant case, a defense attorney indicated during his opening statement that he was going to rely upon the release as part of his defense. Plaintiff's attorney objected and the court stated:

"I thought maybe you decided there wasn't anything to this claim that the release affected this lawsuit to the extent where either it should be dismissed or there should be a credit against any judgment."

The trial court took the objection under advisement and subsequently held:

"The court has examined *Sobotta v Vogel,* 37 Mich App 59 [194 NW2d 564 (1971)], as amplified by 39 ALR3d 260, and the supplement to that annotation wherein it would appear that the significance of a release as a complete satisfaction is a question for the trier of facts.

"The court, therefore, is of the view that the release is an issue in this litigation and overrules the objection."

The Court of Appeals, over dissent of Judge HUGHES, agreed that the release was admissible evidence under *Sobotta, supra. Stitt v Mahaney,* 72 Mich App 120, 126; 249 NW2d 319 (1976). Judge

HUGHES disagreed as to the admissibility of the release:

"I also disagree with the majority's conclusion as to the admissibility of the release. Plaintiff argues that the release was intended to apply only to the owner and operator of the vehicle that struck him; plaintiff and his lawyer so testified. Neither the release nor any witness put forth any evidence that some or all of the defendants were to be released from liability for any injuries to plaintiff caused by the negligence of defendants. Further, no defendant gave any consideration to plaintiff to secure a release from liability. I conclude that the release should not have been admitted." *Stitt, supra,* 127-128.

The *Sobotta* case relied on by both courts below was an apparent attempt by the Court of Appeals to avoid the unfairness of an earlier Michigan Supreme Court case. In *Geib v Slater,* 320 Mich 316; 31 NW2d 65 (1948), this Court held in substance that one who releases a tortfeasor who has acted independently and concurrently with another to cause a single indivisible injury releases all such tortfeasors.[6] Our analysis today convinces us that the rule announced in *Geib* is unfair and unfounded, and although the new statute in Michigan precludes reliance on *Geib* for torts occurring after January 1, 1975, that statute has no applicability to litigation such as the instant case which involves torts occurring before that date. Therefore, we hereby overrule *Geib* and hold that a release given to one tortfeasor who has acted independently and concurrently with another to

---

[6] Justice LEVIN, while sitting on the Court of Appeals, suggested that *Geib* be overruled, *Duncan v Beres,* 15 Mich App 318, 329; 166 NW2d 678 (1968). *Geib* was partially overruled, on a point not relevant to the present cause of action, in *Moore v Palmer,* 350 Mich 363; 86 NW2d 585 (1957). As discussed *infra,* we take this opportunity to follow the advice of Justice LEVIN.

cause a single indivisible injury does not release all such tortfeasors.[7]

This is not to say that a release negotiated with one party would never be admissible evidence in a suit against an independent tortfeasor.

"The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he had received such full compensation that he is no longer entitled to maintain it." Prosser, Law of Torts (4th ed), § 49, p 304.

What was required of defendants as to the release was twofold. First, the burden was on defendants to initially plead the release as an affirmative

[7] Despite the fact that, as stated above, *Sobotta* is apparently an attempt to avoid an unfair rule perpetuated in *Geib,* we do not consider the basic rule announced in *Sobotta* to be inconsistent with our holding today. Our reading of *Sobotta* is neither consistent with that of the trial court nor the Court of Appeals.

The factual situation in *Sobotta* is similar to the instant case. A plaintiff had filed a two-count complaint against Haviland Products Company for injuries resulting from a fall allegedly caused by one of its employees and against a doctor for allegedly negligently diagnosing and treating the injuries.

Plaintiff subsequently settled with Haviland Products in consideration of $4,000, and signed a release of all claims against the company specifically reserving rights and claims against the doctor. Despite the reservation, the doctor was granted a summary judgment by the trial court.

The Court of Appeals distinguished *Geib* on the basis of apportionability of damages, and quoted extensively from *Derby v Prewitt, supra,* 106, which held that the release does not bar suit against a subsequently negligent physician and leaves as an issue of fact, "* * * whether the plaintiff's *settlement* with the * * * driver did actually constitute *satisfaction* of all damages caused by his wrong or was intended as such". *Sobotta, supra,* 63 (emphasis added). The Court of Appeals went on to conclude the opinion by a discussion of *satisfaction* without mention of the release. We find no basis in *Sobotta* for allowing the release into evidence and leaving to the trier of fact the issue of whether it was the intent of the parties to the release that the release extend to the defendants herein; such a holding confuses the concepts of release and satisfaction, the latter of which is to be left to the trier of fact under *Sobotta* (see Part III-B).

defense.[8] This burden was met by defendant City
of Holland in their answer to complaint. Second,
defendants had the burden of establishing the
relevance of the document of release to the lawsuit
when they sought its admission into evidence over
plaintiff's objection. The trial court erred in decid-
ing the release was admissible under *Sobotta* as
discussed in footnote 7, *supra.* Further, the lan-
guage of this form release does not apply to these
defendants. In relevant part the release states:

"* * * I * * * release, acquit and forever discharge
the promisor(s) _____ and any and all other
persons, firms, and corporations of and from any and all
actions, causes of action, claims, demands, damages,
costs, loss of service, expenses, compensation, and all
consequential damage *on account of,* or in any way
growing out of, any and all known and unknown per-
sonal *injuries* and death and property damage *resulting*
or to result *from the accident or occurrence above
described."* (Emphasis added.)

Although this language initially appears general
and all-encompassing, it is clearly limited to dam-
ages "on account of, or in any way growing out of
* * * injuries * * * result[ing] from the accident
or occurrence above described". That "occurrence"

---

[8] GCR 1963, 111.7:

"Affirmative Defenses. A party shall in separate defenses set forth
the facts constituting any affirmative defense, such as, contributory
negligence, assumption of risk, payment, *release,* satisfaction, dis-
charge, license, fraud, duress, estoppel, statute of frauds, statute of
limitations, illegality, want or failure of consideration in whole or in
part, that an instrument or transaction is void or voidable in point of
law, or cannot be recovered upon by reason of statute, or by reason of
nondelivery, and any defense which by reason of other affirmative
matter seeks to avoid the legal effect of or defeat the claim set forth
in the plaintiff's complaint in whole or in part, and any ground of
defense which, if not raised in the pleading, would be likely to take
the adverse party by surprise. When a party has mistakenly desig-
nated a defense as a counterclaim or a counterclaim as a defense, the
court on terms, if justice so requires, shall treat the pleading as if
there had been a proper designation."

is the automobile accident of July 5, 1970. Plaintiff Stitt, however, is not suing the doctors and the hospital for malpractice and damages that resulted from or arose out of the July 5, 1970 auto accident, but for damages (if any) resulting from the separate occurrences of 1) the mislabeling of the X-rays by a technician, and 2) keeping the wrong leg in traction for 11 days even after one of the doctors had discovered the error.[9]

The clear distinction between the two separate torts is sometimes confused because of the quirk in the law which allows a plaintiff to recover from the original tortfeasor for damages caused by a subsequently negligent physician (discussed more fully in part III-B, *infra*). The correctness of this longstanding rule is not at issue in the instant case. However, this rule is based on principles of fairness and convenience to plaintiffs allowing them to recover from the original tortfeasor both for damages resulting directly from the original tort and for damages resulting from a separate tort. The rule exists because the original tortfeasor put the plaintiff in a position where he or she was separately re-injured. This rule of law is not based

[9] The clear distinction between the two occurrences, the automobile accident and the alleged medical malpractice, can best be demonstrated by examples.

1. X attempts suicide by jumping from a third-story window and breaks both legs. X is taken to the hospital and the doctor sets the broken bones in such a negligent manner as to render the legs unusable. X sues the doctor, not for damages resulting from or arising out of his attempted suicide, but for damages resulting from the doctor's subsequent malpractice. The malpractice arose out of nothing more than the doctor's negligent treatment and cannot be carried back and found to result out of the jump—they are separate occurrences.

2. A punches B in the arm and causes persistent swelling. B goes to the hospital three days later and the doctor, in an attempt to reduce the swelling, gives B the wrong treatment. B dies. B's estate sues the doctor. The estate is not suing for an injury growing out of the swelling but for negligence three days later—which is a separate occurrence.

on the fallacy that the two separate injuries are one occurrence. Beyond this, the rule does not operate in reverse, it does not hold the subsequently negligent physician responsible for injuries which brought the plaintiff to the hospital.

Therefore, because the language of the release itself does not extend to the instant tort, it is only relevant to or admissible as evidence in this case if defendants who sought its admission could establish an intention on the part of the parties to the document that it would extend to the subsequently negligent physicians. However, evidence established that no such intention existed. Testimony was taken as to what was understood by the parties at the time of entering into the release.[10] The attorney who represented Stitt in connection with the automobile accident testified that there had been no "discussion with anyone about the release of the doctors and the hospital" and his only contact with the doctors was obtaining medical reports from them. Stitt's father testified as follows:

"* * * I think that I was under the impression at the time that I didn't release anybody but the two old people [driver of the car and presumably his spouse].

[10] Defendant Gesink asserts that parole testimony was not admissible as to the discussions which lead up to the signing of the release because the terms are unambiguous. See 32A CJS, Evidence, § 861. We agree that the terms are unambiguous in that in the document there was no language indicative of an intention to release this claim. Plaintiff's claim against defendants arose solely out of the subsequent malpractice, rather than out of the original accident.

It would be an anomalous rule of law that would permit the trier of fact, rather than the court, to decide the meaning of a writing absent a dispute concerning the circumstances surrounding its execution without violation of the parole evidence rule. In the instant case, the testimony was consistent with the language of the release. Therefore, there was no violation of the parole evidence rule, *Union Oil Co of California v Newton*, 397 Mich 486; 245 NW2d 11 (1976); *Goodwin, Inc v Orson E Coe Pontiac, Inc*, 392 Mich 195; 220 NW2d 664 (1974), and there was no question of fact raised for the jury.

There was *[sic]* two old people that was *[sic]* involved in
the accident, and I never met them. I never met them,
but from the story I have heard—

*    *    *

"[t]hey were retired people and didn't have hardly
any money at all * * *."

Under these circumstances, we find no basis for
admitting the document of release into evidence.
Whether a document is admissible as evidence is a
question for the court and not the jury. There
must be a foundation for admission established by
the moving party. In the instant case no founda-
tion was or apparently could be laid for the admis-
sion; in addition to the above testimony showing
lack of intent, defendants neither put forth proof
that any of them were involved in the negotiations
for the release, nor that any of the consideration
for the release came from them. Most importantly,
there was no indication on the face of the docu-
ment that it was to extend to damages arising
from this independent and successive tort.

## B. Satisfaction

Assuming that defendants sought to introduce
the release neither as a total bar to suit nor for
the purpose of claiming the document itself was
intended to extend to them when they had no
proof to substantiate the same, the further ques-
tion remains as to whether the document could
have been introduced into evidence to prove that
the amount received from the original tortfeasor
was meant to satisfy a claim for all injuries,
including those resulting from the malpractice.

Under the weight of authority as stated above,
the original tortfeasor could have been held liable
for all of the injuries, even those resulting from
the subsequent malpractice of the physicians, 100
ALR2d 808, 813. Michigan is cited within the

annotation as adhering to the rule with the qualification that such total recovery from the original tortfeasor is permissible if the injured person exercised reasonable care in securing the services of a competent physician or surgeon. *Reed v Detroit,* 108 Mich 224; 65 NW 967 (1896); *Strudgeon v Village of Sand Beach,* 107 Mich 496; 65 NW 616 (1895).

It is axiomatic that there can be but one recovery for an injury and if plaintiff herein recovered from the original tortfeasor for his total injuries, including those resulting from the alleged malpractice, then any recovery in the instant suit should be barred as plaintiff would be seeking to profit from his injuries rather than make himself whole under the law.

The Court of Appeals in *Sobotta,* quoting from *Derby v Prewitt, supra,* stated the law as follows:

"[T]he question for resolution, and it is to be decided as an issue of fact upon trial, is whether the plaintiff's settlement with the * * * driver did actually constitute satisfaction of all damages caused by his wrong or was intended as such." *Sobotta, supra,* 63.

The testimony taken at trial regarding the release leaves no question as to the intent of the parties surrounding the settlement; the parties did not contemplate that the resolution of the claim against the driver would affect their ability to recover for the subsequent tort.

The remaining question of whether the amount of money received from the original tortfeasor actually did, in fact, compensate plaintiff fully or partially for his subsequent injuries is not decided solely by intent, and, if defendants in a new trial choose to claim plaintiff has been satisfied, and can put forth relevant evidence on the matter, it re-

mains a question for the jury.[11] Resolution of this question, however, is not affected by the existence of the release and, therefore, that document was not admissible evidence as affecting this issue.[12]

Defendants assert that even if the admission of the release into evidence was error, it was harmless error and should not result in reversal. We do not agree. It is impossible to assess the weight the jury gave to this instrument, but we cannot say in hindsight that the result in this suit might not have been different but for the admission of this evidence and jury instructions pertaining thereto. See *Rouse v Gross,* 357 Mich 475, 481; 98 NW2d 562 (1959).

### IV. DEDUCTION OF AMOUNT RECEIVED FROM ORIGINAL TORTFEASOR FROM POTENTIAL RECOVERY AGAINST DEFENDANTS

The court instructed the jury that, if they found defendants liable, they should deduct from any award of damages the amount plaintiff recovered from the original tortfeasor.

"* * * The plaintiff received $7,020.41 in his settlement of the claim against the driver of the automobile involved in the motorcycle accident. Under the law of Michigan as it now exists, such a driver is responsible for the reasonably foreseeable consequences of his act, including the subsequent negligent conduct of others.

---

[11] If this case resulted subsequent to a trial and judgment against the original tortfeasor, the problem would be simplified. The pleadings, proofs and judgment at the original trial could simply be examined and if found to encompass an award for *all injuries,* including those alleged to result from the malpractice, then the first satisfaction would bar a second suit. See *Cimino v Alway,* 18 Ariz App 271, 276; 501 P2d 447, 452 (1972).

[12] In the instant case there are means through examination of witnesses to establish that a settlement was made with the original tortfeasor and the amount of that settlement.

The law further requires that any such payment received by the plaintiff from such driver be subtracted from any judgment returned against any subsequently negligent person. After you determine the amount of damages, if any, which have resulted from the negligence of one or more of the defendants in this lawsuit, you must then subtract $7,020.41 from that amount and return the resulting figure as your verdict."

Plaintiff objected to the instruction on the grounds that no such deduction was authorized.

As stated in Part III-A of this opinion, the alleged negligence of these defendants is independent and successive to that of the driver who caused the original injury. The suit against these defendants is based solely upon injuries resulting from the subsequent negligent treatment of the original injuries and any recovery must be based on damage proximately caused by defendants and not the original tortfeasor.

Since plaintiff neither instituted the instant suit to recover for his total injuries nor alleges any right to such a recovery, we fail to see any rationale for mandating a deduction.

Defendants allege the same is authorized by *Cooper v Christensen,* 29 Mich App 181; 185 NW2d 97 (1970), and *Sobotta v Vogel, supra.* In *Cooper,* the plaintiff was attacked by three youths at defendant's drive-in. Plaintiff recovered a sum of money from the boys who perpetrated the attack and then sued defendant. The court instructed the jury as follows:

"And I also charge you that the plaintiff has received a sum, according to the testimony, of $1,037.94 from the three boys that committed the assault. And therefore, if you should find the defendant liable, you must deduct the sum of $1,037.94 from the amount of damages you find the plaintiff has proven." *Cooper, supra,* 183.

In *Cooper* the tortfeasors were not joint but independent in that the defendant did not act in concert with the youths and owed plaintiff a different duty than did the youths. See Prosser, Law of Torts (4th ed), § 46, p 291, fn 2. However, the injury for which the plaintiff sought recovery was the identical injury in nature, time and place, as the one for which plaintiff had already partially recovered from the youths. There were no means by which to distinguish a portion of what was due to the action or inaction of defendant and another portion of what was due to the actions of the youths. The Court of Appeals in *Cooper* was correct in not allowing plaintiff to recover doubly for the identical injury.

In the instant case, Stitt is suing defendants, not for the identical injury, but solely for damages resulting from their own alleged negligent treatment which was separate and distinct.

In *Sobotta,* after establishing that satisfaction is a question for the trier of fact, the Court of Appeals stated, "[s]ince Haviland Products [the original tortfeasor] is also liable for defendant's negligence, if any, $4,000 should be subtracted from any judgment returned against defendant". *Sobotta, supra,* 64. The apparent basis for this statement was that Haviland Products could have been held liable for the total damages, including that of the doctor, therefore what had already been paid should be deducted from a subsequent recovery. If the plaintiff in *Sobotta* were suing the defendant doctors for his total damages, then such deduction would be authorized. However, we fail to see any basis for such a deduction in a case such as *Sobotta* where the court explicitly states the damages are apportionable. To instruct that a deduction must be made is to view the original tort and

the subsequent malpractice as one and the same when, as in the instant case, they are not.

Defendants allege the damages, if any, resulting from the malpractice, are indivisible and that there can be no apportionment. If this is the case, and the total damages had not been satisifed by the original tortfeasor (see Part III-B), then as in *Cooper,* the jury will have to determine a total amount and subtract the portion already paid by the original tortfeasor. This is a question for the trier of fact under proper instruction, and not one that can be decided by this Court.

However, triers of fact are frequently faced with analogous situations and are able to arrive at just results under proper instruction from the court.[13]

---

[13] A proper jury instruction must reflect that the law does not hold these defendants in any way liable for injuries caused solely by the original tortfeasor, but that, under current Michigan law, the original tortfeasor could be held liable for damages resulting from two separate torts: the one caused directly by him in the initial tortious act (the automobile accident), and a subsequent and separate tort when and if the original injuries were negligently treated. If the jury finds one or more of these defendants were negligent and their negligence proximately caused injuries to plaintiff, there are two different means by which they might determine damages. If the jury can determine a separate amount of damages which would compensate plaintiff for the injuries attributable solely to the negligent acts of these defendants, it must then determine whether the $7,021.41 settlement with the original tortfeasor represented not only compensation for the original injuries, but also compensation in whole or in part for the subsequent injuries. If the jury so finds, it must, before returning a verdict, deduct from any damages for which these defendants are found liable the portion of the original settlement which is found to compensate plaintiff for the subsequent injuries. If the jury finds that the amount of the original settlement compensated plaintiff solely for the original injuries and not the subsequent injuries caused by these defendants, it must return a verdict against these defendants for the total amount of damages due plaintiff for the injuries they caused.

On the other hand, if defendants are found liable to plaintiff but the jury is unable to specifically determine a separate amount of damages due as a result of defendants' separate negligence, it must determine a total amount of damages due as a result of the total injuries from both torts, and then must allocate the percentage of these total damages attributable to the injuries caused by the original tortfeasor and the percentage attributable to the injuries caused by these defendants. If the amount of the original settlement exceeds in

In many suits grounded in malpractice, the treatment begins after the plaintiff has suffered an injury and juries are able to reasonably separate, normally with the help of expert testimony, the initial injuries and ramifications thereof and those resulting from negligent treatment. We hold that the instruction that deduction must be made was error. Deduction can only be permitted under these facts if there is a finding of liability as to the defendants in addition to a finding of total or partial satisfaction by the initial settlement with the original tortfeasor.

## V. CONCLUSION

It has long been the public policy in Michigan to encourage settlements, and plaintiff should not be penalized by outmoded notions of the common law because he acted in conformity with the policy of settlement. We do not criticize either court below because the prior law regarding releases in Michigan has not been altogether clear, but we hold that there was no basis for admitting into evidence the release signed pursuant to settlement with the original tortfeasor when the subsequent tortfeasors could put forth no substantiation of its application to them and when the release on its face was clearly limited to injuries resulting solely from the original tort. Further we hold that where plaintiff is suing defendants for a separate and distinct injury, there is no basis for requiring that a prior recovery for different injuries be deducted.

the amount of money the percentage of total damages attributable solely to the original tort, the amount of the original settlement must be deducted from the total damages to arrive at the amount due plaintiff from defendants. If the amount of the original settlement does not exceed the percentage of the total damages allocated solely to injuries from the original tort, then the amount for which defendants are liable is their percentage of the total damages.

Whether a deduction is appropriate because the plaintiff has been totally or partially satisfied by a recovery from another tortfeasor who could have been liable for subsequent damages is a question for the trier of fact.

Reversed and remanded. Costs to appellant.

LEVIN and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.