SILISKY v MIDLAND-ROSS CORPORATION

Docket Nos. 78-5235, 44000. Submitted April 3, 1980, at Detroit.—
Decided May 19, 1980. Leave to appeal applied for.

Gerald D. Silisky was fatally injured by electrocution while using
an electric drill at his place of employment. The drill was
borrowed from a fellow employee who had purchased it from K-
Mart. The electrocution occurred when the decedent plugged
the drill into an extension cord in an improper manner. Mil-
dred Silisky, the administratrix of Silisky's estate, brought an
action for the wrongful death of her husband against Midland-
Ross Corporation and Russell and Stoll Division, Midland-Ross
Corporation, as manufacturers of the plug at the end of the
extension cord. Several other defendants were added in an
amended complaint. During trial, a settlement was reached
with all of the defendants except the manufacturers. It was
agreed by the parties that the amount of the settlement would
be subtracted from any judgment ultimately obtained against
the remaining defendants. The jury was not informed of the
settlement, and returned a verdict in favor of the plaintiff. The
Macomb Circuit Court, Kenneth N. Sanborn, J., awarded inter-
est on the difference between the verdict and the settlement
amount from the date of filing the first complaint until date of
satisfaction. Plaintiff appeals, alleging that interest should have
been awarded on the entire amount of the verdict. Defendants
appeal, alleging that the trial court erred by denying a motion

REFERENCES FOR POINTS IN HEADNOTES

[1] 22 Am Jur 2d, Damages §§ 179 *et seq.,* 189 *et seq.*
60 Am Jur 2d, Payment § 110.
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3] 63 Am Jur 2d, Products Liability §§ 57, 58, 63, 66, 98, 132.
Manufacturer's or seller's duty as to product design as affecting his
liability for product-caused injury. 76 ALR2d 91.
[4] 63 Am Jur 2d, Products Liability §§ 3, 33, 70, 99, 100, 110 *et seq.*
Defense to action for personal injury, death, or property damage
resulting from alleged breach of implied warranty. 4 ALR3d 501.
Defense under strict liability in tort. 46 ALR3d 240.
Manufacturer's or seller's duty as to product design as affecting his
liability for product-caused injury. 76 ALR2d 91.
[5] 29 Am Jur 2d, Evidence § 251 *et seq.*

for a directed verdict because the manufacturers could not have foreseen the misuse of their product which was designed to be used only with employer-supplied tools, that the decedent's misuse was the proximate cause of his death, and that the trial court should have informed the jury of the settlement and the amount of the settlement. The appeals were consolidated. *Held:*

1. The plaintiff, by voluntarily settling with the other defendants, waived her right to recover statutory interest on the amount of the settlement because no final judgment was rendered against the other defendants. The plaintiff traded off the loss of interest for the certainty of the settlement.

2. The testimony regarding the design of the plug, the practice of using employee-owned tools, the interchangeability of the plug with tools other than those supplied by the employer, and the issue of adequate warning was sufficient to raise a question of fact for jury consideration. Therefore, denial of the motion for a directed verdict was proper.

3. The death was caused by the decedent's misuse of the plug combined with the plug's design, which was contrary to industry standards of noninterchangeability. The danger was not obvious and apparent. Under these circumstances the decedent's misuse of the plug is not a bar to recovery.

4. The rationale for admitting evidence of settlements is to prevent double recovery. Here, the parties agreed that the settlement would be subtracted from the jury award of damages so there was no danger of a double recovery. The evidence of the settlement was not relevant to any matter in issue before the jury and was, therefore, properly excluded.

Affirmed.

1. INTEREST — SETTLEMENTS — JOINT TORTFEASORS.

A plaintiff who settles a claim against one or more joint tortfeasors, with the amount of that settlement to be subtracted from the amount of a judgment recovered from the remaining tortfeasors, waives the right to statutory interest on the amount of the settlement because no final judgment was rendered against the other defendants.

2. MOTIONS — DIRECTED VERDICTS — APPEAL.

Review of a motion for a directed verdict in favor of a defendant is made by viewing the proofs and reasonable inferences therefrom in the light most favorable to the plaintiff.

3. PRODUCTS LIABILITY — DESIGN DEFECTS — QUESTION OF FACT — EVIDENCE.

A plaintiff, in order to establish a question of fact as to a

manufacturer's breach of duty in a design defect products liability action, must present evidence: (1) that the design was not in conformity with industry standards, guidelines established by an authoritative voluntary association or criteria set by legislative or other governmental regulation or (2) that the design choice of the manufacturer carries a latent risk of injury and the manufacturer has not adequately communicated the nature of that risk to potential users of the product.

4. PRODUCTS LIABILITY — CONTRIBUTORY NEGLIGENCE — MISUSE OF PRODUCT.

Recovery is barred in a products liability action if *the* proximate cause of injury results from the injured party's own conduct; however, if a manufacturer's failure to provide a product reasonably fit for the use intended or reasonably foreseen is *a* proximate cause of the injury, the injured party's misuse of the product will not bar recovery under a theory of implied warranty unless it can be said that the injured party voluntarily and unreasonably proceeded to encounter the known risk.

5. EVIDENCE — SETTLEMENTS — RELEVANCE — RULES OF EVIDENCE.

A trial court's exclusion of evidence of a settlement reached during trial between the plaintiff and some of several joint tortfeasors was proper where the parties stipulated that the amount of the settlement would be subtracted from the amount of any damages determined by the jury and that settlement with one party was not a release of the other parties; evidence of the settlement was not relevant to the factual issues before the jury (MRE 402).

*Zeff & Zeff* and *Kenneth A. Webb,* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for defendants.

Before: J. H. GILLIS, P.J., and ALLEN and BEASLEY, JJ.

ALLEN, J. This is a consolidation of separate appeals by each party from a single judgment entered December 8, 1978, in plaintiff's favor for $262,500 following a jury verdict in plaintiff's favor for $475,000. Plaintiff appeals in case #78-5235 on grounds that interest should have been

awarded on $475,000 rather than on $262,500. Defendants Midland-Ross Corporation and Russell & Stoll Division, Midland-Ross Corporation (hereinafter defendants) appeal in case #44000 on grounds that the trial court erred in three material respects hereinafter described.

On July 17, 1969, plaintiff's decedent was fatally injured by electrocution during the course of his employment while drilling a hole in the fixture of a LaSalle trunnion machine located in the plant. Deceased had borrowed a drill from a fellow employee who had recently purchased it from K-Mart. The drill was equipped with a standard male plug. Deceased inserted the standard plug into a 50-foot extension cord, at the end of which was a female "Russell and Stoll" plug manufactured by defendants. The plug was made in such a way as to permit insertion of a standard male plug in any of three ways, one of which would cause the drill to become electrified. Unfortunately, deceased inserted the standard plug into the extension cord plug in the incorrect position. Deceased held the drill under his arm while doing the drilling and the electric charge entered his body causing death by electrocution.

On July 30, 1970, plaintiff filed a bill of complaint against defendants and others for the wrongful death of her husband and in October, 1971, filed an amended complaint adding additional defendants. All in all, seven defendants were named.[1] August 15, 1978, trial by jury commenced against all seven defendants, and on August 29th, settlement was reached with five defen-

---

[1] In addition to the two defendants in this appeal, the bill of complaint named as defendants: McGraw Edison Company, K-Mart, Albert Kahn Associates, Inc., Darin & Armstrong, Inc. and Brooker Electric Co., Inc. The trial judge referred to the two remaining defendants as one defendant, making six defendants in all.

dants for $212,500. The settlement was stipulated in open court but without the presence of the jury. After the jury returned to the courtroom, the court gave the following instruction:

"Ladies and gentlemen of the jury, I'm sorry to keep you so long but it's not that the people haven't been working in your absence, believe me.

"There has been a rather sudden change of events in this matter whereby five of the six defendants will no longer be with us."

Counsel for defendants demanded that the terms of the settlement be made known to the jury, but the trial court refused to do so.

Trial resumed against the two remaining defendants alone. At the conclusion of plaintiff's proofs, defendants moved for a directed verdict on the basis that the extension cord was not put to its normal use. The motion was denied. At the conclusion of all proofs, defendants renewed their motion for a directed verdict and, upon its denial, again requested that the jury be advised of the terms of the settlement with the other defendants. The trial judge responded as follows:

"As you know, that particular matter posed quite a bit of problem with us as to which would be the safest way to proceed. I am going to adopt the proposed instructions as submitted by the plaintiff's request in this matter which basically indicates that, and that is instruction one, I believe. It reads:

" 'I charge you ladies and gentlemen of the jury that when this case started there were five additional defendants. You are not to concern yourselves whatsoever with the fact they are no longer present in this lawsuit.'

"And I think a little later on, there was a charge about the total damages that they are to consider, so I will deny that request."

September 14, 1978, the jury returned a verdict against defendants in the amount of $475,000. On or about November 1, 1978, $212,500 was paid plaintiff. Though all parties agreed that the award should be reduced by the settlement amount, the parties disagreed as to the base upon which interest should run. Defendants contended that interest at 6% would run on $262,500 ($475,000 minus the settlement of $212,500) from July 30, 1970, when plaintiff filed her first complaint, until date of satisfaction. Plaintiff contends that interest at 6% would run on $475,000 from October 29, 1971, until partial satisfaction was paid November 1, 1978, and thereafter would run on $262,500 until satisfaction. Following a hearing on this question, the trial court decided in defendants' favor and on December 8, 1978, entered judgment for $262,500 plus interest and costs.

*I. Case No. 78-5235: Calculation of Interest*

MCL 600.6013; MSA 27A.6013 reads:

"Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 6% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed."

In *Awedian v Theodore Efron Mfg Co,* 66 Mich App 353; 239 NW2d 611 (1976), plaintiffs sued Theodore Efron Manufacturing Co. and several other defendants for injuries sustained in a slip and fall accident. During trial a settlement was reached with all defendants except Efron for $65,-000. The jury was told about the settlement and the amount and instructed that they should deter-

mine damages without regard to the settlement and then deduct the settlement from their determination of damages. The jury found damages of $150,000 from which they deducted the $65,000 settlement and judgment was entered for $85,000 with interest from the filing of the bill of complaint. Plaintiffs appealed claiming, as in the case before us, that interest should have been computed on the $150,000. This Court disagreed with plaintiffs, saying:

"We find this argument novel and interesting but without merit. As defendant notes, MCLA 600.6013; MSA 27A.6013, provides for interest on 'any money judgment recovered'. Plaintiffs did not recover $150,000 from Efron. By accepting $65,000 in settlement, plaintiffs waived the right to statutory interest on that amount because no final judgment was rendered against the other defendants. Plaintiffs traded off the loss of this interest for the value of a settlement." *Awedian, supra,* 358.

Except for the fact that in *Awedian* the jury itself, rather than the trial judge, deducted from the damages the amount of the settlement, we find no meaningful difference between it and the instant case. The purpose of awarding interest from the date a complaint is filed until date of satisfaction of judgment is to compensate the prevailing party for the time taken to determine the dollar amount, if any, of the loss. When plaintiff voluntarily settled with the other five defendants, plaintiff traded off the loss of interest for the waiting period in exchange for the certainty of the settlement.

Plaintiff argues that *Awedian* was decided faultily and is contrary to decisions from at least two other jurisdictions. *Hampton v Delaney,* 115 NH 675; 349 A2d 602 (1975), *Boston Edison Co v*

*Tritsch,* 370 Mass 260; 346 NE2d 901 (1976). We disagree. In *Hampton,* a verdict was entered against two defendants March 7, 1973, for $48,351, and almost one month later stipulations were filed that one defendant had settled for $25,000. The court held that "since the $25,000 settlement took place after the verdict", plaintiff was entitled to interest on $48,351 from the date of filing until the date the $25,000 was paid. The decision in *Boston Edison* may be contrary to *Awedian* but, if so, its precedential value is offset by the holding in *Duffy v City of New York,* 7 App Div 2d 988; 183 NYS2d 863 (1959), *aff'd* 7 NY2d 900; 165 NE2d 413 (1960), which is compatible with *Awedian.*[2]

*II. Case No. 44000: Three Alleged Errors*

Defendants first claim that the trial court should have granted the motion for a directed verdict because the system at the Ford plant where plaintiff's decedent worked was designed for use only with Ford-supplied tools and defendant manufacturers could not have foreseen the misuse of the system by an employee using his own or borrowed employee-owned tools in violation of Ford policy. Review of a motion for directed verdict is made with "the proofs and reasonable inferences therefrom * * * viewed in the light most favorable to plaintiff", *Humenik v Sternberg,* 371 Mich 667, 669; 124 NW2d 778 (1963), *Signs v Detroit Edison*

---

[2] At oral argument plaintiff cited *McGrath v Clark,* 89 Mich App 194; 280 NW2d 480 (1979), as supportive of plaintiff's appeal. In that case, two weeks before trial defendant made an offer of judgment for $20,000. The offer was silent on the question of interest. The offer was accepted and the proper papers were filed but a dispute arose as to whether the judgment should include prejudgment interest. The Court held that "where the parties agree on the entry of judgment under GCR [1963,] 519.1, but make no provision for prejudgment interest, the party in whose favor the judgment is entered is entitled to interest under RJA § 6013". However, in the case before us, the parties did not agree on the entry of judgment and in fact agreed that from the determination of damages (verdict) the settlement amount should be deducted.

*Co,* 93 Mich App 626, 631; 287 NW2d 292 (1979). Under this standard of review, we find the testimony sufficient to raise a question of fact for jury consideration.

The transcript contains testimony that the plug in question was in conflict with industry design standards and that defendants were aware of its interchangeability with nonconforming plugs. Contrary to defendants' contention, we find no testimony of a company policy against the use of employee-owned tools. In fact, a Ford engineer testified it was a common practice for employees to bring in outside tools including power tools. Another witness stated he had seen such tools at the Sterling plant. Though one witness believed Ford was fully aware and had been informed of the interchangeability of the plugs, the transcript does not disclose that defendants warned Ford or the workmen in the plant. The question of foreseeability of injury, the adequacy of warning thereof by the manufacturer and the duty of the manufacturer to give such warning is set forth in *Owens v Allis-Chalmers Corp,* 83 Mich App 74, 81; 268 NW2d 291 (1978), *lv gtd* 405 Mich 827 (1979), as follows:

"Consequently, we conclude that for a plaintiff to establish a question of fact as to a manufacturer's breach of duty in design defect products liability litigation, evidence of the following must be presented:

"(1) That the particular design was not in conformity with industry design standards, design guidelines established by an authoritative voluntary association, *or* design criteria set by legislative or other governmental regulation; *or*

"(2) That the design choice of the manufacturer carries with it a *latent* risk of injury *and* the manufacturer has *not* adequately communicated the nature of that risk to potential users of the product."

Sufficient evidence concerning the two tests set forth above is contained in the record to take the case to the jury.

Defendants' second ground for reversal is that "*the* proximate cause of plaintiff's decedent's demise was his own misuse of the female receptacle for the plug on the K-Mart drill". In *Dooms v Stewart Bolling & Co,* 68 Mich App 5, 16-19; 241 NW2d 738 (1976), this author wrote to the conditions under which contributory negligence is a defense in a products liability suit. The rule spelled out in that case was that if *the* (as distinguished from *a)* proximate cause of injury stems from the injured party's own conduct, such as misuse of the product, then recovery is barred. But,

"* * * if the failure of a manufacturer to provide a product reasonably fit for the use intended or reasonably foreseen is found to be *a* proximate cause of the injury to plaintiff, the fact that plaintiff's *misuse concurred with the defect to cause the harm will not bar recovery under a theory of implied warranty* unless it can be said that plaintiff voluntarily and unreasonably proceeded to encounter the known risk." *Dooms,* 18. (Emphasis supplied.)

Obviously, the instant case is one where death was caused by a combination of plaintiff's decedent's misuse of the extension plug *and* a plug designed contrary to the industry standards of noninterchangeability. The danger encountered was not obvious and apparent, *Casey v Gifford Wood Co,* 61 Mich App 208; 232 NW2d 360 (1975), and there was no testimony that decedent proceeded to encounter a known risk. Accordingly, decedent's possible misuse of the defectively designed plug is not a bar to recovery.

The third claim of error presents a more difficult question. Should the trial judge, upon request of counsel, have informed the jury of the settlement and its amount? Evidence thereof was offered by the defendants not for the purpose of establishing liability but for the purpose of mitigating damages.[3] At first blush, Michigan cases appear to disagree as to whether evidence of settlements may be offered on the issue of damages. Holding that settlements should be brought to a jury's attention are *Chunko v LeMaitre,* 10 Mich App 490; 159 NW2d 876 (1968), *Manuel v Weitzman,* 386 Mich 157, 167; 191 NW2d 474 (1971), *Larabell v Schuknecht,* 308 Mich 419; 14 NW2d 50 (1944), and *Stitt v Mahaney,* 403 Mich 711; 272 NW2d 526 (1978). Coming to a contrary conclusion is *Brewer v Payless Stations, Inc,* 94 Mich App 281; 288 NW2d 352 (1979).

However, the decisions can largely be reconciled. It is evident that the principal reason in favor of admitting evidence of settlements is to prevent double recovery. *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 96-97; 284 NW2d 126 (1979). Where, as in the case before us, the parties have stipulated that from the damages ultimately determined by the jury there would be deducted the dollar amount of the settlement and that settlement with one party was not a release of the other parties, double recovery is precluded. This was the conclusion of our Court in *Brewer, supra,* 284:

"Under the new rules of evidence, evidence that is not relevant, that is, has no bearing on a material issue

---

[3] It is clear that evidence of a prior settlement is not admissible to establish liability or the absence of liability. *Thirlby v Mandeloff,* 352 Mich 501, 505; 90 NW2d 476 (1958), McCormick, Evidence (2d ed), § 274, pp 663-664.

of fact, is inadmissible at trial. MRE 402. In the instant case, unlike that of *Stitt,* evidence of plaintiff's settlement with General Motors had no bearing on an issue of fact for the jury.

\* \* \*

"As is obvious, the reasons supporting the Supreme Court's decision in *Stitt* have no application here. Because plaintiff has stipulated to permit *the trial court to deduct the total amount of the settlement with General Motors from any jury verdict against Payless,* plaintiff will not receive a double recovery. As long as the jury can fairly determine the portion of plaintiff's damages caused by the negligence of Payless, assuming that Payless has any liability at all, there is no need for the jury to know the amount of plaintiff's settlement with General Motors or, in fact, to even know that a settlement occurred." (Emphasis supplied.)

The facts in the instant case are not distinguishable from *Brewer.* In both cases plaintiff agreed that the court could subtract from the jury award of damages the amount of the settlement. Accordingly, we find that the trial court's exclusion of evidence of the settlement was proper for failure of such evidence to meet the MRE 402 threshold requirement of relevancy.[4]

Affirmed. Costs in each case to the party prevailing.

---

[4] Because the evidence of settlement is inadmissible under MRE 402, it is unnecessary to reach MRE 408. Though there is an absence of Michigan authority interpreting MRE 408, it is identical to Federal Rules of Evidence, 408. See 2 Louisell & Mueller, Federal Evidence, § 170, pp 271-280.