JONES v SANILAC COUNTY ROAD COMMISSION

Docket No. 59434. Submitted June 8, 1983, at Lansing.—Decided
September 13, 1983. Leave to appeal applied for.

Kenneth R. Jones and Matthew Bye died as a result of injuries

REFERENCES FOR POINTS IN HEADNOTES

[1, 17] 22 Am Jur 2d, Death § 164.

Admissibility of evidence of, or propriety or comment as to,
plaintiff-spouse's remarriage, or possibility thereof, in action for
damages for death of other spouse. 88 ALR3d 926.

Remarriage for surviving spouse, or possibility thereof, as affecting
action for wrongful death of deceased spouse. 87 ALR2d 252.

[2, 17] 22 Am Jur 2d, Death § 259.

[3, 17] 57 Am Jur 2d, Name § 9.

Right of married woman to use maiden surname. 67 ALR3d 1266.

[4, 5] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

[6] 31 Am Jur 2d, Expert and Opinion Evidence § 146.

Admissibility of opinion evidence as to the cause of an accident or
occurrence. 38 ALR2d 13.

[7] 31 Am Jur 2d, Expert and Opinion Evidence § 48.

Use of medical or other scientific treatises in cross-examination of
expert witnesses. 60 ALR2d 77.

[8] 29 Am Jur 2d, Evidence § 818.

[9] 22 Am Jur 2d, Death §§ 100, 140.

[10] 4 Am Jur 2d, Appeal and Error § 521.

5 Am Jur 2d, Appeal and Error § 738.

[11] 5 Am Jur 2d, Appeal and Error § 882.

29 Am Jur 2d, Evidence §§ 253, 260.

[12] 5 Am Jur 2d, Appeal and Error § 939.

[12, 13] 22 Am Jur 2d, Damages §§ 366, 367.

[14] 22 Am Jur 2d, Damages § 23.

[15] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 104-106, 343 *et
seq.*.

57 Am Jur 2d, Municipal, School, and State Tort Liability § 302.

Liability and suability, in negligence action, of state highway, toll
road, or turnpike authority. 62 ALR2d 1222.

Rule of municipal immunity from liability for acts in performance
of governmental functions as applicable to personal injury or
death as result of a nuisance. 56 ALR2d 1415.

[16] 40 Am Jur 2d, Highways, Streets, and Bridges § 555.

Am Jur 2d, New Topic Service, Comparative Negligence § 46.

suffered in a collision between their vehicles at the intersection of two county roads in Bridgehampton Township in Sanilac County. Jo Ann Jones, Kenneth's wife, suffered injuries in the accident also. She subsequently filed a personal injury and wrongful death suit individually and as administratrix of the estate of Kenneth R. Jones against the Sanilac County Road Commission and Bridgehampton Township in Sanilac Circuit Court alleging that the accident occurred as the result of the defective and unsafe condition of the intersection of the two county roads. The court, Allen E. Keyes, J., directed a verdict in favor of Bridgehampton Township. Following a two-week trial, the jury returned a verdict in favor of the estate of Kenneth R. Jones in the amount of $700,000, which was then reduced by the 15% comparative negligence attributed by the jury to Kenneth Jones and by $20,000 representing a settlement obtained from a lawsuit involving the estate of Matthew Bye. In addition, plaintiff received $75,000 for her individual injuries, which amount was reduced by $19,500 received in settlement from the Bye estate. The total damages award was $630,500. Defendant moved for a new trial, judgment notwithstanding the verdict and *remittitur,* all of which were denied. Judgment was entered, Allen E. Keyes, J. Defendant appeals and plaintiff cross-appeals. *Held:*

1. The trial court erred by requiring defense counsel to refer to plaintiff by her former married name, Jones, rather than her current married name. Reversal is not the proper remedy, however, because defendant was not prejudiced by the use of plaintiff's former name.

2. The trial court did not err by finding that plaintiff's expert witness possessed sufficient qualifications to testify as an expert in traffic engineering or accident reconstruction. The record amply supports the trial court's determination.

3. The police officers who investigated the accident and plaintiff's expert witness possessed sufficient knowledge of the pertinent facts to formulate conclusions relative to the cause of the accident.

4. The trial court did not err by admitting testimony of tests conducted by the investigating officers and plaintiff's expert witness. The tests were conducted under conditions similar to the conditions at the time of the accident and were not conducted in an attempt to factually recreate each element of the accident.

5. It was not error for the trial court to allow plaintiff's expert witness to utilize the "conservation of momentum" theory in arriving at his estimation of the speeds of the

vehicles involved in the accident. Without eyewitnesses or knowledgeable survivors, the estimation of the speed of a traveling vehicle must be determined by resort to scientific principles, and the theory applied is a basic law of physics.

6. The trial court did not determine that the road plaintiff and her decedent were traveling at the time of the accident was a primary road. Uncontroverted testimony by both plaintiff and defense witnesses indicated that the road was a primary road.

7. The trial court properly allowed the jury to decide the issue of whether a change in a 1976 State Highway Department policy directive should be applied retroactively.

8. No error occurred by the court's refusal to give defendant's proposed jury instruction that although the road plaintiff and her decedent were traveling at the time of the accident was designated a primary road such designation did not conclusively make it a primary road.

9. The trial court did not err by not allowing reference to be made to a prior lawsuit between plaintiff and the estate of Matthew Bye. Prior to trial, the parties agreed to reduce any damages awarded by the jury by the amount received in the settlement between plaintiff and the Bye estate. Furthermore, evidence of the settlement was not admissible for purposes of disclosing contributory negligence of Matthew Bye, and defendant's allegation that its right of cross-examination was impermissibly restricted by defendant's being unable to impeach plaintiff by the prior pleadings and consent judgment was not preserved for appellate review.

10. There was no abuse of discretion on the part of the trial court in excluding evidence of plaintiff's childbearing subsequent to the accident.

11. There was sufficient testimony to sustain the verdict on both the question of defendant's negligence and on the extent of damages. The trial court did not err by not ordering *remittitur.*

12. The trial court did not err by instructing the jury that damages could be awarded for loss of consortium.

13. The trial court did not err in deducting the percentage of plaintiff's decedent's comparative negligence from the verdict on the ground that defendant's negligence was premised upon the failure to provide a safety device.

Affirmed.

D. E. HOLBROOK, JR., J., concurred in the result only. He disagrees with the majority's holding that the trial court erred

by requiring defense counsel to refer to plaintiff by her former married name rather than by her current married name.

OPINION OF THE COURT

1. DEATH — WRONGFUL DEATH — DAMAGES — SOCIETY — COMPANIONSHIP — REMARRIAGE.

   Evidence of a plaintiff's remarriage is irrelevant to mitigate damages of the plaintiff surviving spouse in an action for the other spouse's wrongful death.

2. DEATH — WRONGFUL DEATH — REMARRIAGE.

   A plaintiff surviving spouse in a wrongful death action who has remarried will not be permitted to affirmatively misrepresent her marital status to the jury.

3. PARTIES — NAMES — MARRIED WOMEN.

   A woman who is a party to a lawsuit should be addressed by whatever name she regularly uses, whether it be her birthname, her name from a prior marriage, or the name of her present husband.

4. WITNESSES — EXPERT WITNESSES.

   The qualification of a witness as an expert is a matter for the discretion of the trial court and it is incumbent upon the person offering an expert witness to show that the witness possesses the necessary learning, knowledge, skill or practical experience to enable him to give such testimony.

5. WITNESSES — EXPERT WITNESSES — APPEAL.

   The decision of a trial court regarding the qualifications of an expert witness will not be reversed absent an abuse of discretion.

6. AUTOMOBILES — AUTOMOBILE ACCIDENTS — EXPERT WITNESSES.

   An expert witness's opinion as to how an automobile accident occurred and the point of impact may be based solely on debris and skid marks observed at the scene of the accident.

7. WITNESSES — EXPERT WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

   An expert may give opinion testimony without first disclosing the underlying facts for his opinion; however, on cross-examination he may be required to disclose the underlying facts (MRE 705).

8. EVIDENCE — TEST RESULTS — EXPERIMENTS.

   The admissibility of test results and experiments performed by experts and nonexperts is a matter within the wide discretion

of the trial judge; before evidence of such tests can be admitted, however, a proper foundation must be laid to show that the test or experiment properly duplicates the conditions leading to the lawsuit.

9. EVIDENCE — WRONGFUL DEATH — SETTLEMENTS — MITIGATION OF DAMAGES.

It was not error for a trial court in a wrongful death action brought prior to March 1, 1982, to exclude evidence of a settlement between the plaintiff and a codefendant, disclosure of which defendant sought for purposes of mitigating damages.

10. EVIDENCE — OFFERS OF PROOF — APPEAL.

It is essential for trial counsel to make an offer of proof with regard to excluded testimony so that the trial court can rule intelligently and the appellate court may determine whether the exclusion of such evidence resulted in a substantial injustice; an issue on the failure to admit testimony which has been excluded is not preserved for appeal in the absence of an appropriate offer of proof.

11. EVIDENCE — APPEAL.

A determination by the trial court that the prejudicial effect of evidence outweighs its probative value rests within the sound discretion of the trial court and will only be overturned for an abuse of discretion.

12. JUDGMENTS — *REMITTITUR* — APPEAL.

The power to order or deny *remittitur* should be exercised with restraint, and the Court of Appeals, in reviewing a decision of a trial court to grant or deny *remittitur* or a new trial, must determine whether there has been an abuse of discretion.

13. JUDGMENTS — *REMITTITUR* — JUDICIAL CONSCIENCE.

Courts are reluctant to disturb jury verdicts in personal injury cases and give great deference to the jury determination; where the trial court finds no other errors in the trial, *remittitur* may only be ordered if the verdict is so excessive as to shock the judicial conscience.

14. DAMAGES — SPECULATIVE DAMAGES.

Damages are not speculative merely because they cannot be ascertained with mathematical precision.

15. GOVERNMENTAL IMMUNITY — HIGHWAYS — STATUTES.

Recovery from a governmental agency upon its failure to keep a highway under its jurisdiction in reasonable repair and in a

condition reasonably safe and fit for travel may be had by those
sustaining bodily injury as a result of the failure or by those
sustaining injuries directly arising from such bodily injury,
including loss of consortium.

16. NEGLIGENCE — COMPARATIVE NEGLIGENCE — DAMAGES — HIGH-
    WAYS.

    A trial court properly reduced the total damages award in a
    wrongful death and personal injury action brought against a
    county road commission for failing to provide a stop sign at the
    intersection of two county roads, one being a primary road,
    where an automobile accident occurred where the defendant
    placed into issue the question of plaintiff's decedent's negli-
    gence and the jury returned a special verdict indicating that
    the decedent was 15% comparatively negligent.

OPINION OF D. E. HOLBROOK, JR., J.

17. DEATH — WRONGFUL DEATH — REMARRIAGE — PARTIES — NAMES
    — MARRIED WOMEN.

    It was not error for a trial court in a wrongful death action to
    allow the plaintiff spouse of the decedent to use her married
    name at the time of the accident rather than her married
    name at the time of the trial where the plaintiff maintained
    many accounts and records in her former married name, sev-
    eral of her friends and co-workers who had known her prior to
    her remarriage continued to refer to her by her previous
    married name, the plaintiff filed a motion in limine to deter-
    mine whether she should be addressed at trial by her former or
    current married name, and the court determined that interjec-
    tion of plaintiff's remarriage would create prejudice and specu-
    lation on the part of the jury and that defendant would not be
    prejudiced by the use of plaintiff's former name since her
    remarriage was not relevant to the case.

*Goodman, Eden, Millender & Bedrosian* (by *Paul
A. Rosen* and *Robert A. Koory),* for plaintiff.

*Robert D. Stalker,* for defendant.

Before: DANHOF, C.J., and ALLEN and D. E. HOL-
BROOK, JR., JJ.

ALLEN, J. Plaintiff filed suit in her individual
and representative capacities against the Sanilac

County Road Commission and Bridgehampton Township for personal injuries and the wrongful death of her husband, which occurred as a result of a January 15, 1977, automobile accident. Plaintiff claimed that her injuries were the result of the defective and unsafe condition of the intersection of Maple Grove Road and Nichol Road, both county roads under the jurisdiction of the Sanilac County Road Commission (hereinafter defendant). A directed verdict in favor of Bridgehampton Township was granted and is not at issue in this appeal. Following a two-week jury trial in May, 1981, the jury returned a verdict in favor of plaintiff estate for $700,000, which was reduced by the 15% comparative negligence attributed by the jury to decedent and by $20,000, which represented the settlement obtained from a suit involving the other driver, Matthew Bye. Plaintiff received $75,-000 for her individual injuries, which amount was reduced by $19,500 received in settlement from the Bye estate. The total damage award was $630,500. Defendant's motions for new trial, judgment notwithstanding the verdict and *remittitur* were denied by an order entered on August 3, 1981.

Defendant appeals as of right raising seven issues. Plaintiff cross-appeals as of right raising one issue. We first address the issues raised by defendant.

I

DID THE TRIAL COURT ERR BY REQUIRING DEFENSE COUNSEL TO REFER TO PLAINTIFF BY HER FORMER MARRIED NAME RATHER THAN HER CURRENT MARRIED NAME?

Prior to trial plaintiff filed a motion *in limine* to determine whether plaintiff should be addressed at trial as "Jo Ann Jones" (her previous married

name) or "Jo Ann Hall" (her current married name). Evidence of plaintiff's remarriage may not be used to determine damages suffered by the plaintiff upon the death of her spouse. However, the plaintiff will not be permitted to affirmatively misrepresent her marital status to the jury. The plaintiff should be addressed by whatever name she regularly uses, whether it be her birthname, her name from a prior marriage, or the name of her present husband. *Wood v Detroit Edison Co,* 409 Mich 279; 294 NW2d 571 (1980).

Evidence presented at a hearing on the matter showed that many accounts and records were maintained in the name of Jo Ann Jones and several of plaintiff's friends and co-workers who knew her previous to her remarriage referred to plaintiff as Jo Ann Jones. Based on this evidence the trial court concluded that plaintiff still maintains an identity under the name of Jones and, therefore, that it would be proper to address her by that name at trial.

However, it is the name which plaintiff herself uses that should be the appropriate form of address. Plaintiff regularly uses the name Hall and although for some purposes, such as her insurance checks, the mortgage for her farm land and loan papers on her current residence, she uses the name Jones, all those occurrences happened prior to her marriage in 1978. We believe that the court erred, and that under *Wood, supra,* plaintiff should have been referred to at trial as Hall. However, we do not believe that reversal is the proper remedy under the circumstances since: (1) plaintiff properly brought the motion before trial to avoid any impropriety or prejudice and the trial court made a ruling on this issue in her favor, (2) as determined by the trial court, interjection of plaintiff's

remarriage would create prejudice and speculation on the part of the jury and (3) since plaintiff's remarriage was not relevant to the case, defendant was not prejudiced by the use of plaintiff's former name. We note that the *Wood* case involved an interlocutory appeal. The Court can easily correct an erroneous evidentiary ruling prior to trial where an application for leave to file an interlocutory appeal has been granted. However, due to the gravity of reversal once a trial is concluded, we will not reverse for an erroneous evidentiary ruling unless the appellant's case was prejudiced.

## II

DID THE TRIAL COURT ERRONEOUSLY ADMIT THE TESTIMONY OF DUANE DUNLAP AND THE INVESTIGATING POLICE OFFICERS?

At trial, plaintiff introduced evidence to illustrate that the intersection of Maple Grove and Nichol Roads was unsafe due to a visual obstruction in the southeast quadrant. There were no traffic control signs or speed signs at the intersection, which plaintiff argued were required for vision obstructed intersections under the standards established by the Association of State Highway and Transportation Officials and defendant's rules. Both lay and expert witnesses testified that a vehicle proceeding westbound on Nichol Road and a vehicle proceeding northbound on Maple Grove Road would be unable to perceive the approaching traffic due to a ridge or rise in the southeast quadrant. The investigating officers, Sergeants Thomas and Kenny, gave testimony establishing the point of impact of the Jones and Bye vehicles and the results of a test conducted on January 16, 1977, to determine the sight distances at the intersection. The expert testimony of Duane Dunlap

was offered on sight distance of the intersection and speed of the vehicles.

A

Defendant argues that Duane Dunlap did not possess sufficient qualifications to testify as an expert in traffic engineering or accident reconstruction. The qualification of a witness as an expert is a matter for the discretion of the trial court and it is "incumbent on the person offering an expert witness to show that the witness possesses the necessary learning, knowledge, skill or practical experience to enable him competently to give such testimony". *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976). The decision of the trial court regarding the qualifications of an expert will not be reversed absent an abuse of discretion. *Wood v Posthuma,* 108 Mich App 226; 310 NW2d 341 (1981).

Dunlap has three engineering degrees. He worked at the Highway Safety Research Institute between 1969 and 1976, where he dealt with crash characteristics of roadside structure, problems with curve and grade combinations in roadways, and accident causation and reconstructions. Since 1976, Dunlap has worked as an independent consulting engineer. He has been involved in reconstructing approximately 100 to 200 accident cases, including 50 to 100 cases involving highway safety or design factors. He has written numerous articles concerning highway safety and is familiar with the basic standards promulgated by the American Association of State Highway and Transportation Officials regarding the design and maintenance of roadways. The record amply supports the trial court's determination.

B

Defendant argues that the police officers and Dunlap possessed insufficient knowledge of the pertinent facts to formulate conclusions relative to the cause of the involved automobile accident. Defendant argues that Sergeant Thomas's opinion as to the point of impact was based on no credible evidence. Defendant further argues that Dunlap's opinion as to the cause of the accident was rendered without an examination of the mechanical condition of the vehicles involved in the accident and a determination of the physical state of the involved drivers.

Sergeant Thomas established the point of impact based on his observation of the final resting place of the vehicles, chunks of snow and ice debris in the roadway and a scuff mark in the intersection. An expert's opinion may be based solely on debris and skid marks observed at the scene. *Motorists Mutual Ins Co v Howard,* 21 Mich App 146; 175 NW2d 351 (1970). See also *Dudek v Popp,* 373 Mich 300; 129 NW2d 393 (1964). Evidence that the conditions may have changed due to lapse of time between the accident and Thomas's observations and the severe weather conditions prevalent relates to the credibility of the witness rather than the admissibility of his testimony.

As to Dunlap's testimony, MRE 705 provides that an expert may give opinion testimony without first disclosing the underlying facts for his opinion. On cross-examination, the expert may be required to disclose the underlying facts. Dunlap based his opinion on the observations and tests performed by the investigating officers and upon his own observations and the three sight-distance tests performed on March 6, 1978. He testified concerning the scientific principles he utilized in reaching his

decision and the factors incorporated into his evaluation. Dunlap was subject to extensive cross-examination concerning the basis for his opinion. Defendant brought out the fact that Dunlap did not personally examine the vehicles or question plaintiff concerning her husband's physical condition. Those factors affect the weight to be given Dunlap's testimony by the trier of fact and do not indicate an insufficient factual foundation for the totality of his testimony. Further, there is no indication or support in the record that information concerning those two factors would have altered or impacted upon Dunlap's opinion.

C

Defendant next argues that the trial court erroneously admitted testimony of the tests conducted by Sergeants Thomas and Kenny and by Dunlap because they were not conducted under conditions similar to the conditions at the time of the accident.

The admissibility of test results and experiments performed by experts and nonexperts is a matter within the wide discretion of the trial judge. *Hartford Fire Ins Co v Walter Kidde & Co, Inc,* 120 Mich App 283; 328 NW2d 29 (1982). Before evidence of such tests can be admitted, a proper foundation must be laid to show that the test or experiment properly duplicates the conditions leading to the lawsuit. *Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398; 100 NW2d 257 (1960).

On January 16, 1977, Sergeants Thomas and Kenny returned to the accident scene to determine if the hill or rise they observed in the southeast quadrant of the intersection would influence drivers on Maple Grove and Nichol Roads. The officers began at points before the intersection and pro-

ceeded at approximately five to ten miles per hour toward the intersection. The officers stopped their patrol cars at a point where they were able to see the upper halves of the vehicles. They then paced the distance to the intersection and determined it to be approximately 100 feet from both vehicles.

Dunlap conducted three tests at the accident site on March 6, 1978. He utilized a 1977 Chevrolet pickup truck and a 1970 Javelin to determine sight-distance measurements. Those vehicles were similar to the vehicles driven by Kenneth Jones and Matthew Bye. Distances along both roadways were marked off at 50-foot intervals. The vehicles were then positioned and photographs and measurements were taken, illustrating the points at which the other vehicle was visible across the southeast quadrant at various distances. Dunlap performed a second test utilizing a 3'6" marker. Dunlap testified that this was a standard test condition for establishing sight distances, which was recognized in the Michigan Manual of Uniform Traffic Control Devices. The third test was performed at night to determine at what distance headlights from a vehicle approaching from the opposite corner of the intersection could be observed. The cars were driven slowly towards the intersection and at approximately 200 to 220 feet from the intersection a "glow" could be observed by both drivers.

Defendant claims that none of the tests possessed the requisite degree of similarity necessary as a condition precedent to admissibility. While, as defendant argues, there were differences between the conditions of the vehicles, the weather and the lighting, the tests were not conducted in an attempt to factually recreate each element of the accident. The tests were performed with the objec-

tive of determining whether the rise or ridge in the southeast quadrant would in any way have an effect on the ability of a driver of a northbound vehicle on Maple Grove to observe a vehicle driven westbound on Nichol Road. The intersection itself had not been altered or changed in any material fashion. The conditions existing at the time of the tests were similar to those in existence on the night of the accident. The trial judge did not abuse his discretion in allowing the police officers and Dunlap to give testimony regarding the tests and the results.

### D

Defendant finally claims that the "conservation of momentum" theory utilized by Dunlap in arriving at his estimation of the speeds of the vehicles has not been accepted in the scientific community in the field of accident reconstruction and therefore testimony and conclusions based thereon should have been excluded. Dunlap testified that the theory was developed in the 18th century by Isaac Newton and that it was a well-recognized scientific principle. The theory and Dunlap's knowledge of the type and weight of the vehicles involved in the collision, the paths traveled by the vehicles after impact, and the police reports concerning the point of impact were used to determine the relative speed of the vehicles. Dunlap testified that the Bye vehicle was traveling at approximately 33 to 44 mph and that the Jones vehicle was traveling at approximately 23 to 33 mph. Testimony concerning the relative speed of the vehicles was designed to assist the jury in their determination of whether the sight distance of the intersection was a probable cause of the

collision and furnished the groundwork for Dunlap's later opinion.

As a basic law of physics, testimony on the "conservation of momentum" theory was admissible. See *O'Dowd v Linehan,* 385 Mich 491; 189 NW2d 333 (1971), holding admissible similar testimony concerning the principles of inertia and forces of collision. The range of speeds does not conclusively establish that Dunlap's tests were unreliable or unscientific. Without eyewitnesses or knowledgeable survivors, the estimation of the speed of a traveling vehicle must be determined by resort to scientific principles. Those variables were proper subjects of cross-examination and the variation of the speed estimates was brought to the jury's attention. The testimony was properly admitted and defendant's arguments are related to the weight and credibility of the testimony and not to the admissibility.

## III

### WAS THE TRIAL COURT'S DETERMINATION OF THE LEGAL STATUS OF MAPLE GROVE ROAD IN ERROR?

Defendant's claim on this issue, like Gaul, is divided into three parts. First, defendant contends the trial court erred in making the determination that Maple Grove Road was a "primary" road. Contrary to defendant's claim, the record shows that the trial judge did not make the designation. The uncontroverted testimony at trial, by both plaintiff and defense witnesses, indicated that Maple Grove Road was certified and designated as a primary road in 1973. See MCL 247.652; MSA 9.1097(2). At the conclusion of the separate record testimony of Frederick Elwood, the trial judge stated: "There doesn't seem to be any question but what *[sic]* that in 1973 the State certified Maple

Grove Road at its intersection with Nichol Road as a primary road." That statement was made outside the presence of the jury and at no time did the trial judge inform the jury that as a matter of law Maple Grove Road was in fact a primary road.

Second, defendant contends that the trial judge erred when he allowed the jury to decide whether a change in a 1976 State Highway Department policy directive should be applied retroactively. According to defendant, the question should have been decided by the court. Because of a conflict in the testimony, we find that the trial court properly allowed the jury to decide the issue. Frederick Elwood testified as to the unwritten policy prior to 1976 and the policy change which occurred in 1976 requiring that roads meet primary standards prior to their certification by the state.

At the conclusion of the separate record, the trial judge noted that there was no indication that the 1976 policy change was retroactive as to roads that had previously been certified. The trial judge determined that he could not make a legal determination at that time but would leave the issue to the jury to decide what standards would apply to Maple Grove Road. The trial judge noted that there was a conflict in the testimony but that there was no written policy which would establish that the county had the affirmative duty to upgrade all roads previously certified to primary status by virtue of the 1976 letter. There was a conflict in the testimony on this issue and the trial judge properly left it to the jury's determination.

Third, it is claimed that the trial judge erred in refusing to give defendant's proposed jury instruction number 5, that although Maple Grove Road was designated a primary road such designation did not conclusively make it a primary road. De-

fendant cites no law or authority supporting its position. Given the fact that the uncontroverted testimony of both parties was that the road was designated primary and the fact that no law is cited in support of defendant's position, we decline to find error.

## IV

DID THE TRIAL COURT ERR BY NOT ALLOWING REFERENCE TO BE MADE TO A PRIOR LAWSUIT BETWEEN THE ESTATE OF MATTHEW BYE AND PLAINTIFF?

Plaintiff moved *in limine* to prohibit reference to the prior lawsuit and resulting settlement between the Bye estate and plaintiff. Defendant argued then, and now argues on appeal, that reference to the pleadings and settlement were admissible: (1) to lessen defendant's liability, (2) to illustrate the contributory negligence of Matthew Bye and the negligence of decedent, and (3) to impeach plaintiff by a party admission.

Prior to trial the parties agreed to reduce any damages awarded by the jury by the amount received in the settlement. The principal reason for admitting evidence of prior settlements is to prevent double recovery to the plaintiff. Where, as here, the parties have agreed to deduct the settlement from any ultimate recovery, double recovery is precluded. *Silisky v Midland-Ross Corp,* 97 Mich App 470; 296 NW2d 576 (1980). *Stitt v Mahaney,* 403 Mich 711; 272 NW2d 526 (1978), involved the effect of a release of the original tortfeasor on the remaining defendants. The Supreme Court held that the "boiler plate" language of the release was open to differing interpretations and therefore the release was properly submitted to the jury to determine the intent of the parties. In *Brewer v*

*Payless Stations, Inc,* 412 Mich 673, 679; 316 NW2d 702 (1982), the Supreme Court held that in trials commencing after March 1, 1982:

"[T]he policy in Michigan shall be: When there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, the jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise."

Although the Supreme Court affirmed the conclusion reached by this Court, the decision was rendered as a matter of policy and not of law. Here, there is no dispute as to the amount of the settlement or that plaintiff reserved her right to proceed against the present defendant. Trial in the instant case was held May 5-19, 1981. Based on existing case law at that time, the trial judge properly excluded evidence of the settlement for the purpose of mitigating damages.

Was evidence of the settlement admissible for purposes of disclosing possible contributory negligence of Matthew Bye? We think not. No testimony was brought out at trial in reference to any alleged negligence of Bye and defendant made no offer of proof on this issue. At the conference on jury instructions, defense counsel stated: "There is no allegation or there's nothing been brought up at this trial that would indicate any negligence on the part of Bye." Defendánt may not claim error on appeal when the issue was not preserved at trial by any offer of proof and was not argued at trial. Finally, there is no claim that the prior settlement released this defendant from liability. In this respect, the case is distinguished from *Stitt, supra,* as that case involved an ambiguous release

and the issue of the intent of the parties in signing the release was submitted to the jury.

Finally, was defendant's right of cross-examination impermissibly restricted because defendant was unable to impeach plaintiff by the prior pleadings and consent judgment? There is no evidence that defendant made an offer of proof concerning the contents of the pleadings or the consent judgment. When a party claims error in the exclusion of evidence, it is essential that the party seeking its admission make the relevant facts known to the trial court so that it may rule intelligently on its admissibility. *Illenden v Illenden,* 46 Mich App 710; 208 NW2d 565 (1973). Defendant's failure to place sufficient facts on the record precludes meaningful appellate review.

Pleadings and prior inconsistent statements may be admissible for impeachment purposes at a later trial. However, defendant has not disclosed the existence of any inconsistency in plaintiff's testimony and failed to make an offer of proof at trial. Cases cited by defendant may be distinguished in that each permitted impeachment by prior pleadings when the witness had denied sustaining injuries which had been pled in the previous case. See *Schwartz v Triff,* 2 Mich App 379; 139 NW2d 907 (1966); *Selph v Evanoff,* 28 Mich App 201; 184 NW2d 282 (1970); *Hanik v Wilczynski,* 33 Mich App 268; 189 NW2d 815 (1971). Defendant's failure to make an offer of proof as to any alleged inconsistency precludes meaningful appellate review.

Defendant's argument that the consent judgment constitutes an admission binding on plaintiff concerning the negligence and liability of Matthew Bye is not persuasive. Parties may enter into a consent judgment for a variety of reasons and, as noted above, consent judgments do not reflect the

full satisfaction of a party's claim. Defendant had the opportunity to present evidence at trial regarding Bye's negligence. No testimony was offered and, at the conclusion of the trial, defendant admitted that there was no allegation or proof of Bye's negligence. The consent judgment did not effectuate a release of the present defendant. Defendant has failed to preserve the issue for appeal.

## V

### Did the trial court err by excluding the evidence of plaintiff's subsequent childbirths?

Defendant sought to introduce evidence that, following plaintiff's remarriage, she had given birth to two children. Defendant's offer of proof was for the purpose of offsetting plaintiff's claim for lost wages during the two maternity leaves and to minimize the extent of plaintiff's claimed residual disabilities. The trial court ruled as follows:

"Next, it is argued by defendants that the jury must be told that plaintiff has given birth to these two children, as well as the one with which she was pregnant at the time of the accident, so that this fact may be considered by the jury in determining the nature and extent of her alleged back and pelvic area problems. In weighing these two conflicting considerations, the court believes, as indicated in the court rule, that we must involve ourselves in a weighing process. It is the opinion of this court that even for this purpose, the fact of these two after born children should not be made known to the jury because the prejudice to the plaintiff outweighs the probative value of the evidence. In this connection, counsel should abide by the following rules: 1. The plaintiff shall make no claim or reference in the testimony to injuries sustained in the accident in any way relating to childbearing problems experienced by plaintiff in connection with the birth of the last two children, and likewise the defendant's

counsel shall make no reference thereto. However, as to the birth of the first child born, following the accident, and with which the plaintiff was pregnant at the time of the accident, this may be examined into by any party. Next, the plaintiff shall make no claim for, in inquiry into any time during which the plaintiff was absent from work due to maternity or illness caused by maternity or pregnancy, and neither shall the defendants inquire into such matters.

\* \* \*

"Okay. Does anyone have an objection in that regard, if it's stated to the jury that she was off on a sick leave, that had nothing to do with the injuries resulting in this accident."

We find this claim to be the most meritorious of the several issues raised on appeal. At first blush, it would appear that if it had known that the injured party had given birth to two healthy children several years later the jury might not have awarded so large a verdict. Nevertheless, though the issue is admittedly close, we decline to reverse.

Plaintiff's medical testimony consisted of a deposition of Dr. Jack Martin, an orthopedic surgeon, and a video deposition of Dr. Edward Nebel, who first saw plaintiff on March 15, 1978, and treated her for left low back pain and numbness and pain in her left leg. Martin testified that plaintiff would continue to have sacroiliac pain for years to come. Nebel performed a laminectomy in April, 1978, and authorized plaintiff to return to work in August, 1978. He next saw plaintiff in February, 1980, when she complained of mild pain in the left leg and back. He prognosticated as follows:

"A. She is borderline between the eight *[sic]* and twenty percent. Eighty percent of the people have absolutely no symptoms at all. Here she has occasional symptoms in her left buttocks and again this issue is

clouded a little bit. Is that truly from her L-4 disc or from the left sacroiliac joint injury. Both of them give you symptoms in the same area, and then I am suspicious of that SI joint giving her some mild backache. She is not having any leg symptoms which are usually from a nerve root compression, or referred pain from lumbar disc.

"*Q.* With respect to the SI joint, the sacroiliac joint, would you expect that condition, doctor, to stay about the same, get better, get worse?

"*A.* I think it would stay about the same, experience intermittent symptoms and there is no gross fracture of the joint. There was not a real wide separation."

Basically, defendant claims that the ability to produce children in itself evidences a lack of severity of injuries previously sustained. But in the absence of some medical testimony to this effect, it does not necessarily follow that this is true. Defendant did not produce a medical expert. In fact, defendant never had the plaintiff examined by a medical doctor. Consequently, defendant never made a conditional offer of proof to link childbirth to a lower degree of injury or pain. While defendant refers to cases holding that subsequent activities of an injured party may be admissible if they have a bearing on the extent of the injuries sustained,[1] defendant introduced no medical proofs that childbearing resulted in or could be equated with a lower threshhold of pain and suffering in the instant case.

Pursuant to the trial court's ruling, plaintiff did not claim loss of earnings during the periods of pregnancy. Although her complaint alleged complications of pregnancy, this portion of her claim was dropped prior to trial. A determination by the trial court that the prejudicial effect of evidence

---

[1] *Wood v Davenport,* 127 Cal App 2d 247; 273 P2d 564 (1954); *Tucker v Lower,* 200 Kan 1; 434 P2d 320 (1967).

outweighs its probative value rests within the sound discretion of the trial court and will only be overturned for an abuse of discretion. *People v Castillo,* 82 Mich App 476; 266 NW2d 460 (1978). The obvious potential prejudicial impact of this evidence on a jury who would think the plaintiff was having children out of wedlock was great compared to its limited probative value. Defendant did not offer evidence to show that plaintiff's injuries were less severe than claimed or that the injuries were not permanent. Defendant sought only to introduce the "possibility" that plaintiff would fall within the 80% category of individuals who do not have significant problems following disc surgery. However, plaintiff continued to have pain after the surgery and the births and Dr. Nebel did not rule out the possibility that the separated sacroiliac joint was causing the recurring pain. Based upon the limited medical testimony available, we conclude that there was an insufficient foundation to illustrate a connection between the injuries sustained, and their severity, and the subsequent pregnancies. Accordingly, we find no abuse of discretion on the part of the trial court.

## VI

DID THE TRIAL COURT ERR BY DENYING DEFENDANT'S MOTION FOR A NEW TRIAL?

Defendant contends that there was insufficient testimony to sustain the verdict on both the question of defendant's negligence and on the extent of damages. On the first question the central issue was whether there was a visual obstruction in the southeast quadrant of the intersection which rendered the intersection unsafe for travel. Defendant argues an insufficiency of the evidence on the

grounds that the testimony of Duane Dunlap and the investigating police officers was erroneously allowed. That is the same issue as discussed at length in part II (A-D) of this opinion. Because this testimony was properly admitted, there clearly was ample evidence both in testimony and exhibits to support the verdict of the jury.

On the question of damages, defendant contends that the award to the estate of $700,000[2] was excessive and that the trial judge should have granted defendant's motion for *remittitur.* In reviewing a decision of the trial court to grant or deny a *remittitur* or new trial, this Court must determine whether there has been an abuse of discretion. *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981). The *remittitur* power should be exercised with restraint. Courts are reluctant to disturb jury verdicts in personal injury cases and give great deference to the jury determination. Where the trial court finds no other errors in the trial, *remittitur* may only be ordered if the verdict is so excessive as to "shock the judicial conscience". *Pippen v Denison Div of ABEX Corp,* 66 Mich App 664; 239 NW2d 704 (1976). Damages are not speculative merely because they cannot be ascertained with mathematical precision. Here, the jury was cognizant of decedent's age, occupation, and first-year farm earnings and had access to the statutory mortality tables. Defendant offered no evidence to lessen or reduce the earning potential of decedent. Defendant did not argue damages to the jury and made no attempt to show that decedent's farm earnings were in any way excessive. The jury verdict is

―――――――――
[2] The $700,000 was reduced by 15% ($105,000) to reflect the jury finding that the deceased was 15% negligent. The resulting $595,000 was then reduced by $20,000 which was paid in the settlement between Bye's insurer and plaintiff.

within the range of evidence and represents a reasonable assessment of damages.

Defendant also claims that the $75,000 award to plaintiff in her individual capacity was excessive and not supported by the evidence. As a result of the accident, plaintiff sustained the following injuries: frost-bitten hands and feet, fractures of her left inferior and superior pubic ramus, separation of the left sacroiliac joint and a fracture of her right collarbone; intermittent pain in her left low back with numbness and tingling in her left leg; a loss of fine sensation in her fingertips; and, following a fall on the ice in February of 1978, which occurred when her left leg gave out, had disc surgery; had to limit herself during her work as a registered nurse due to difficulty in bending and supporting additional weight; has some difficulty performing usual household chores, such as vacuuming, laundry and dishwashing; and, although offered a full-time supervisory position, was afraid that her back pain would be aggravated by the extra work and did not accept the position.

The nature and extent of plaintiff's injuries were detailed fully at trial. In personal injury cases, unless the amount awarded "shocks the judicial conscience", *remittitur* is inappropriate. *Pippen, supra.* There is no absolute standard by which juries or courts can measure the amount of damages. Evidence was presented to show plaintiff's lost wages, pain and suffering and difficulty performing normal tasks of life. No claim was made by plaintiff for the time that she lost from work for her two subsequent maternity leaves. The jury was informed that the plaintiff was off work during those periods of time for an unrelated illness. The verdict was within the range of evidence and does not appear to be an unreasonable amount.

## VII

Did the trial court err by instructing the
jury that damages could be awarded for loss
of consortium?

Relying heavily on *Endykiewicz v State High-
way Comm,* 102 Mich App 662; 302 NW2d 271
(1981), defendant contends that the trial court
erred when it instructed the jury that damages
could be awarded for loss of consortium. In an-
swer, plaintiff notes that in *Longworth v Dep't of
State Highways,* 110 Mich App 771; 315 NW2d 135
(1981), another panel of this Court refused to
follow *Endykiewicz* and allowed damages for loss
of consortium. On October 5, 1982, the Supreme
Court resolved the conflict by unanimously holding
in *Endykiewicz* on appeal that damages for loss of
companionship and society may be recovered. *En-
dykiewicz v State Highway Comm,* 414 Mich 377,
384; 324 NW2d 755 (1982). Accordingly, we hold
that the trial court did not err on this issue.

## VIII

Did the trial court err in deducting the
percentage of plaintiff's decedent's compara-
tive negligence from the verdict since defen-
dant's negligence is premised upon the failure
to provide a safety device?

This issue is raised by plaintiff as cross-appel-
lant. Relying on *Funk v General Motors Corp,* 392
Mich 91; 220 NW2d 641 (1974), which held that
contributory negligence may not be raised as a
defense where injury results from a defendant's
failure to provide a safety device, cross-appellant
urges that, similarly, comparative negligence may
not be raised as a defense where injury results
from the failure to provide safety signing. *Funk*
was decided prior to Michigan's adoption of com-

parative negligence in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

However, we believe this question has been resolved against cross-appellant by *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982). In that case the Supreme Court held that comparative negligence was available in a negligence action involving the failure to provide a safety device. Likewise, in *Wade v State Highway Comm,* 92 Mich App 234; 284 NW2d 522 (1979), *lv den* 408 Mich 852 (1980), and *Hall v Dep't of State Highways,* 109 Mich App 592; 311 NW2d 813 (1981), *lv den* 413 Mich 942 (1982), panels of this Court refused to extend the *Funk* analysis to cases involving a breach of the statutory duty to maintain roadways in a reasonably safe condition. In *Hall, supra,* this Court affirmed the 75% reduction in the damage award attributed to plaintiff's percentage of negligence. In the present case, defendant brought out testimony showing plaintiff's decedent's familiarity with the intersection in question. Defendant had placed into issue the question of Kenneth Jones's negligence. The jury returned a special verdict indicating that Kenneth Jones was 15% comparatively negligent. That figure was utilized to reduce the total damage award. Under *Hardy, Wade* and *Hall, supra,* the reduction was proper. We affirm.

Affirmed both as to the complaint and cross-complaint. No costs, neither party having prevailed in full.

DANHOF, C.J., concurred.

D. E. HOLBROOK, JR., J. *(concurring).* I concur in the result only for the reason that I do not believe the trial court erred, as does the majority, relative to Issue #1.